HAWTHORNE, Justice.
 

 The primary issue in these matters' is whether appellant Noel Thomas is entitled to be paid, by virtue of his homestead exemption, the full sum of $4,000 from the
 
 *513
 
 proceeds of a sheriff’s sale. The property-sold was seized under a judgment in favor of Melba L. Harvey for the principal sum of $2,500 plus 8 per cent per annum interest from December 22, 1951, until paid, 10 per cent attorney’s fees on the principal and interest, and all costs. After seizure of the property but before public sale, the judgment debtor, Thomas, intervened alleging that the property seized was his homestead, and that he was entitled to be paid $4,000 out of the proceeds of the sale because of his homestead exemption. At the sale the property was adjudicated to the judgment creditor for $18,000 in cash, and the sheriff, after paying all costs of the proceedings and the full amounts due under first and second mortgages, instituted a concursus proceeding, deposited the balance of the proceeds in the registry of the court, and cited all claimants, including the judgment debtor who was claiming the amount of his homestead exemption, to appear and assert their respective claims.
 

 The concursus proceeding was tried, and the district court rendered judgment ordering disbursement of the proceeds of the sale, including payment of $768.40
 
 [1]
 
 to Thomas, the homestead claimant. In due course the clerk of court disbursed the funds under the authority of the judgment, and thereafter Thomas took a devolutive appeal.
 

 The mortgage certificate obtained by the sheriff and read by him before the sale disclosed that there were some 16 encumbrances against the property including conventional mortgages, judicial mortgages, and various liens, and that the proceeds of the sale were insufficient to pay and discharge all of these claims. It was conceded that the property seized and sold was the homestead of the judgment debtor and had been his homestead since January 1, 1952.
 

 Under the provisions of Article 11, Section 1, of the Louisiana Constitution of 1921, if the homestead exceeds $4,000 in value, the beneficiary shall be entitled to that amount in case the sale of the homestead under legal process realizes more than that sum. Under Section 2 of this article, however, this homestead exemption does not apply to certain debts specifically enumerated. Among these are debts (No. 2) “For labor, money, and material, furnished for building, repairing or improving homesteads” and (No. 4) “For taxes or assessments”.
 

 As stated previously, the property sold was burdened with numerous encumbrances. Article 3329 of our Civil Code provides that among creditors mortgages, whether conventional, legal, or judicial, take rank in the order in which they are
 
 *515
 
 recorded. Bank of Erath v. Broussard, 161 La. 657, 109 So. 347; see Central Sav. Bank & Trust Co. v. Tucker, 182 La. 289, 161 So. 759; Union Homestead Ass’n v. Finck, 180 La. 437, 156 So. 458. Although mortgages must be paid according to their rank, mortgages without homestead waiver cannot encroach upon the homestead exemption of $4,000, but the holder of a mortgage superior in rank which does not contain a homestead waiver has the right to be paid out of the excess of the proceeds above the $4,000 homestead exemption in preference to subsequent mortgages which enjoy a homestead waiver. Bank of Erath v. Broussard, supra.
 

 With these principles of law in mind, let us now consider the disbursement of the proceeds of the sheriff’s sale in the present case.
 

 As stated above, the property was sold for $18,000 in cash, and the sheriff after paying all costs paid in full the holder of the first mortgage in rank (as disclosed by the mortgage certificate), in which there was no homestead waiver. This mortgage was properly paid from the excess above the $4,000 homestead exemption, there being a sufficient amount in this excess to pay this mortgage in full. The sheriff then paid the second mortgage in rank, which contained a homestead waiver. This left a balance of $7,709.85. The sheriff deposited this balance in the registry of the court in the concursus proceeding, and cited the numerous claimants to appear and assert their respective rights to be paid from this sum.
 

 The question for decision is: How should this fund be disbursed under the principles of law set forth above?
 

 The court costs of $52.40 in the concursus proceeding were paid first. There was also paid to the clerk of court $73 as costs incurred in the concursus proceeding in a matter growing out of the claim of L. A. Picou to be paid the 10 per cent attorney’s fees provided for in the judgment of the seizing creditor Melba L. Harvey. After payment of these two items there remained a balance of $7,584.45.
 

 The next encumbrance in rank, No. 3 on the mortgage certificate, is a material-man’s lien in favor of W. A. Hood Lumber Company for the amount alleged to be due for lumber and building materials sold to Thomas. The trial judge did not order this lien paid, and properly so, for the apparent reason that it was not reinscribed in the mortgage records within one year from the date of its initial recordation. R.S. 9:4812; Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566.
 

 The next encumbrance in rank is the iudicial mortgage of the seizing creditor Harvey. This mortgage enjoys no homestead waiver and cannot encroach up
 
 *517
 
 on Thomas’ $4,000 homestead exemption, but, being next in rank of recordation, it is entitled to be paid from the excess above the homestead exemption, which excess was $3,584.45.
 
 [2]
 
 The total amount due under this mortgage, including court costs, interest, and attorney’s fees, exceeds the amount of this excess,
 
 [3]
 
 and accordingly Harvey is entitled to the entire excess. Thus at this point Thomas was left with the full amount of his homestead exemption of $4,000, and this sum is all that remained from the proceeds of the sale deposited in the registry of the court.
 

 There are other conventional and judicial mortgages inferior in rank in point of recordation which do not enjoy any homestead waiver and which cannot encroach on Thomas’ $4,000 homestead exemption. Consequently the holders of these mortgages are not entitled to receive anything from the proceeds of the sale.
 

 We come next to the very crux of Thomas’ complaint. Although the trial judge gave full recognition to his claim for $4,000 homestead exemption, the judge nevertheless ordered paid out of this $4,000 two claims for debts, although inferior in rank as regards recordation to numerous other judicial and conventional mortgages which did not enjoy the homestead waiver and whose owners received nothing from the proceeds of the sale. The first of these debts resulted from federal income tax liens amounting to $2,047.56, and the other was for materials sold for building, repairing, or improving the homestead as evidenced by a judgment in favor of Clinton Lumber Company, Inc., formerly W. A. Hood Lumber Corporation, on which judgment there was due the sum of $1,184.-40. Apparently the trial judge ordered these items paid from the homestead exemption under the provisions of Paragraphs 2 and 4 of Section 2 of Article 11 of the Constitution, as set out above.
 

 The first question for our determination is whether Thomas’ homestead exemption is effective against recorded federal income tax liens.
 

 The identical question was considered in United States v. Heasley, D.C.1959, 170 F. Supp. 738, in which it was held that the several states cannot carve out homestead exemptions from the effect of federal income tax liens; that the Congress of the United States created such federal tax liens, and they cannot be affected by state legislatures without the consent of Congress; and that it is basic that United
 
 *519
 
 State courts have the last word in federal tax matters. The court cited in support of these propositions United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705; United States v. Heffron, 9 Cir., 158 F.2d 657.
 

 In Lafayette Bldg. Ass’n v. Spofford, 221 La. 549, 59 So.2d 880, this court had occasion to consider Paragraph 4 of Section 2 of Article 11 of the Louisiana Constitution, which provides that the homestead exemption is not applicable to debts for taxes or assessments. In that case it was definitely and emphatically stated that the word “taxes” as there used embraced no other type of taxes than those assessed directly against the homestead property. The court in that case was dealing only with taxes levied and assessed by the state, for the question there was whether the word “taxes” in Article 11, Section 2, Paragraph 4, included excise taxes levied by the state and due by the one claiming the homestead exemption. The court held that a debt for excise taxes was not a debt to which the homestead exemption did not apply. Here, however, we are dealing with income taxes levied by the United States government, and under the federal authorities set out above we think the trial judge properly ordered these income taxes paid.
 

 We also think he properly ordered the amount due under the lumber company judgment paid from the $4,000, for it was shown that this was a debt for materials incurred in repairing or improving the homestead. See La.Const. of 1921, Art. 11, Sec. 2, Par. 2.
 

 After payment of these two debts there remained for Thomas under his homestead exemption only $768.04, and as this amount was paid to Thomas by the clerk of court, he has no cause for complaint.
 

 To give Thomas his full homestead exemption we should have to disregard the principle of law that
 
 among
 
 creditors mortgages, whether conventional, legal, or judicial, take rank in the order in which they are recorded. In other words, we should have to manipulate the mortgages so as not to pay them in accordance with their rank, and, as said in Bank of Erath v. Broussard, supra [161 La. 657, 109 So. 348], “ * * * Such a procedure would take away from prior mortgages which enjoy no homestead waiver their right to be paid out of such excess in preference to subsequent mortgages which enjoy such waivers, and hence could not be tolerated for a moment”.
 

 Appellant Thomas also claims that the clerk did not distribute the fund deposited in the registry of the court in accordance with the judgment rendered in the con
 
 *521
 
 cursus proceeding. The clerk disbursed the fund in accordance with our opinion and in accordance with the judgment of the district court, and appellant Thomas was entitled to receive from this fund only the amount which he did receive.
 

 Melba L. Harvey, the owner of the judicial mortgage under which the property was seized, has answered the appeal claiming that the district .court erred in ordering paid to the clerk of court $73 incurred in what he says was a rule instituted by him to have the amount of L. A. Picou’s attorney’s fees reduced from $2,500 to the amount ordered paid by the trial judge. We do not find in the record any rule instituted by Harvey for this purpose. However, there was a proceeding instituted by L. A. Picou in which he sought to be paid the 10 per cent attorney’s fees provided in the seizing creditor’s judgment. This proceeding was a part of the concursus proceeding itself, and L. A. Picou was recognized to be entitled to the 10 per cent attorney’s fees set forth in the Harvey judgment. Consequently costs of this proceeding were properly taxed as costs by the trial judge and ordered paid-to the clerk of court.
 

 For the reasons assigned the judgment appealed from is affirmed, appellant to pay all costs of this appeal.
 

 [1]
 

 . There is a mathematical or clerical error in this figure; the sum ordered paid to Thomas should have been $768.04. This error, however, is inconsequential.
 

 [2]
 

 . There remained in the fund deposited in court after payment of costs $7,584.45. Consequently, after the homestead exemption of $4,000 was deducted, there remained in this fund $3,584.45.
 

 [3]
 

 . In the amount to be paid Harvey there is included $332.25 representing the 10 per cent attorney’s fees due L. A. Picou, which the trial judge ordered paid directly to Mr. Picou.