**UNITED STATES of America,**
**Appellant,**

v.

**Louis LEVENTHAL et al., Appellees.**

**No. 17107.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 12, 1962.

Decided Jan. 24, 1963.

**342**

Mr. Joseph Kovner, Atty., Dept. of Justice, with whom Asst. Atty. Gen. Louis F. Oberdorfer, was on the brief, for appellant. Lee A. Jackson, Atty., Dept. of Justice, also entered an appearance for appellant.

Mr. Milton M. Burke, Washington, D. C., for appellees.

Before WASHINGTON and BURGER, Circuit Judges, and BELL, Circuit Judge for the Fourth Circuit.*

WASHINGTON, Circuit Judge.

This is a case in which a Federal tax lien, under Section 6321 of the Internal Revenue Code of 1954, 26 U.S.C. § 6321 (1958), was asserted against Rifkind Sales Company, Inc. The question is whether this lien shall prevail over the claims of the appellees, a partnership which was Rifkind's landlord, based on the landlord's lien given by D.C.Code § 45–915 (1961).

---

* Sitting by designation pursuant to Section 291(a), Title 28 U.S.Code.

The Government assessed Rifkind on May 26, 1961, for unpaid Federal taxes in the amount of $1,483.88. It notified Rifkind and demanded payment on that same day. On July 5, 1961, the appellee landlords began suit against Rifkind in the Municipal Court for the District of Columbia, (now the District of Columbia Court of General Sessions), claiming unpaid rent of $1,125 plus interest and costs, and obtained a writ of attachment. On July 11, 1961, the writ was executed by the United States Marshal, who seized goods belonging to Rifkind valued at $2,295.50. On August 4, 1961, the Government's tax lien was filed in the office of the Clerk of the United States District Court for the District of Columbia, and on August 8 the United States attached the goods in the Marshal's hands. On August 18, 1961, the landlords obtained a judgment for $1,423.25 in the Municipal Court, and on September 19 the goods were sold at public auction.

On November 22, 1961, the Marshal began an interpleader suit in the District Court to settle the conflicting claims to the proceeds of the sale. The United States intervened as a plaintiff in the action. The District Court granted the landlords' motion for summary judgment, and the Government has appealed to us.

Under Sections 6321 and 6322 of the Internal Revenue Code of 1954,[1] the United States acquired on May 26, 1961, a lien against all the property of Rifkind Sales Company by virtue of the assessment of taxes made against it on that date. Under the terms of Section 6323 of the Code [2] this lien was valid as of that date against all persons except mortgagees, pledgees, purchasers, and judgment creditors [3] and it became valid even as against these four classes of persons when the lien was filed for record on August 4, 1961, with the Clerk of the District Court. At the time the Federal lien attached on May 26, 1961, it was a perfected lien on all the debtor's property and could only be displaced, except as to the four classes mentioned in Section 6323, by a prior choate or perfected lien. United States v. City of New Britain, Conn., 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 (1954); cf. United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963).

Two questions are thus presented: (1) Were the landlords "judgment creditors" within the meaning of Section 6323 at any time prior to August 4, 1961, when the Federal lien was recorded and thus became "valid" as against judgment creditors; [4] and (2) if the landlords were not

1. "§ 6321. Lien for taxes
    "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
    "§ 6322. Period of lien
    "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

2. "§ 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors
    "(a) Invalidity of lien without notice. —Except as otherwise provided in sub-

section (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate.
    *     *     *     *     *
    "(3) With clerk of district court for District of Columbia.—In the office of the clerk of the United States District Court for the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

3. See United States v. Scovil, 348 U.S. 218, 220, 75 S.Ct. 244, 99 L.Ed. 271 (1955).

4. It has not been suggested that they were mortgagees, pledgees, or purchasers and obviously they were not within those categories at any stage. Cf. United States v. Scovil, supra, 348 U.S. at 220–221, 75 S.Ct. at 246–247, 99 L.Ed. 271 deciding that a landlord was not a purchaser.

judgment creditors prior to August 4, 1961, did they have a choate or perfected lien prior to May 26, 1961, the date on which the Federal lien arose, which would take precedence over the Federal lien? The controlling decisions dictate that the answer to both questions must be in the negative.

■ (1) It is now settled that the word "judgment" in the term "judgment creditor" in Section 6323 was used "in the usual, conventional sense of a judgment of a court of record * * *." United States v. Gilbert Associates, 345 U.S. 361, 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953). In United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), the Supreme Court decided that the tax lien of the United States was prior in right to an attachment lien where the Federal lien was recorded subsequent to the date of the attachment lien but prior to the date the attaching creditor obtained judgment. The Court said:

"The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment * * *. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a *lis pendens* notice that a right to perfect a lien exists.

"Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded, Morrison did not have a judgment lien. He had a mere 'caveat of a more perfect lien to come.' [People of State of] New York v. Maclay, 288 U.S. 290, 294 [53 S.Ct. 323, 324, 77 L.Ed. 754]."

See also United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. Liverpool & London Insurance Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955).

■ So, in our case, the landlords had no judgment lien and were not judgment creditors on August 4, 1961, when the United States recorded its lien. On that date they had taken only one step—attachment. Although under D.C.Code § 45–916 attachment is said to be one way of "enforcing" the tacit landlord's lien given by Section 45–915,[5] the obtaining of an attachment did not perfect the lien. It was simply a form of protective impounding, and gave the landlords no more than an unperfected attachment lien. It did not determine that Rifkind owed anything to appellees, much less in what amount. That determination did not occur until August 18, when the Municipal Court issued its judgment. The landlords then became judgment creditors. But the lien they then acquired, with the accompanying right to levy on the attached property, was under the Security Bank, Acri, and Liverpool & London decisions too late to defeat the Federal lien which

---

5. These sections are as follows:

"§ 45–915. Landlord's lien for rent.

"The landlord shall have a tacit lien for his rent upon such of the tenant's personal chattels, on the premises, as are subject to execution for debt, to commence with the tenancy and continue for three months after the rent is due and until the termination of any action for such rent brought within said three months."

"§ 45–916. Lien—How enforced.

"The said lien may be enforced—

"First. By attachment, to be issued upon affidavit that the rent is due and unpaid; or, if it be not due, that the defendant is about to remove or sell some part of said chattels.

"Second. By judgment against the tenant and execution, to be levied on said chattels, or any of them, in whosesoever hands they may be found.

"Third. By action against any purchaser of said chattels, with notice of the lien, in which action the plaintiff may have judgment for the value of the chattels purchased by the defendant not exceeding the rent in arrear."

had already become valid as against judgment creditors.

(2) Since the landlords were not judgment creditors on August 4, 1961, the lien of the United States came into being and became effective as to them on May 26, 1961, the date of assessment. See United States v. Scovil, supra. And United States v. City of New Britain, Conn., supra, indicates, as pointed out, that the Federal lien as of that time will be superior and have priority over all liens except those which had become choate and perfected before that date. The Supreme Court there said that liens under state law were "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." 347 U.S. at 84, 74 S.Ct. at 369, 370, 98 L.Ed. 520.[6]

On May 26, 1961, the landlords in our case had only the tacit lien given them by Section 45–915 of the District of Columbia Code, no steps at all having been taken to assert or enforce it. We held in United States v. Saidman, 97 U.S.App.D.C. 344, 348, 231 F.2d 503, 507 (1956), that the landlord's tacit lien under this section of the Code is not given priority, that it is not a specific and perfected lien, that although the identity of the lienor and the amount of the lien may have been known, "the specific part of the property required to satisfy the lien had not been segregated and the debtor had not been divested of title or possession as to any part of his property." The present case is not distinguishable,[7] except that here even the amount of the landlords' lien appears not to have been known on May 26, when the tax lien arose. The allegations of the landlords' motion for summary judgment in the District Court are:

"Some time between April 1, 1961, and July 5, 1961, the Rifkind Sales Company, Inc., apparently abandoned the premises leaving its goods therein and being indebted to the Leventhal [sic] for rents covering a period of more than three months. On July 5, 1961, Leventhal filed a landlord and tenant action in the Municipal Court for the District of Columbia entitled Louis Leventhal, Robert Leventhal, and Thelma Leventhal vs. Rifkind Sales Company, Inc., Civil Action No. L&T 45763–61, where they sought to recover rents for the period of April 1, 1961, to July 31, 1961."

This suggests that rental may have been paid up until April 1, 1961. But it does not amount to an allegation that as of May 26 the amount of the rents to be claimed, and thus the amount of the lien, were known or ascertainable, much less that they were ascertained.

■ For the reasons stated in United States v. Saidman and repeated above, the lien of appellees was an inchoate unperfected lien which does not have precedence over the lien of the United States.

(3) One further matter needs to be mentioned. On November 9, 1961, appellees filed a motion in their landlord and tenant case in the Municipal Court against Rifkind "to direct payment of proceeds of attachment and to assess additional costs." Appellees did not name the United States as a defendant, did not undertake to serve process upon it as provided in Fed.R.Civ.P. 4(d) (4), and did not otherwise attempt to bring

---

6. See also 347 U.S. at 86, 74 S.Ct. at 370, 371, 98 L.Ed. 520, where the Court again referred to certainty as to amount, identity of the lienor, and the property subject to the lien as the factors needed to convert an inchoate lien into one which will displace the Federal lien. And see United States v. Waddill Co., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945), holding that a landlord's statutory lien was not specific and perfected, even

though described by the state courts as not "inchoate," and cf. United States v. Scovil, supra, also dealing with a landlord's lien.

7. While the Saidman case arose under a different statute, 31 U.S.C. § 191, dealing with the priority of the claims of the United States against insolvent persons and their estates, the principles involved are similar.

346

the United States in as a party defendant to that motion under 28 U.S.C. § 2410. The United States was not represented at the hearing on the motion on November 27, 1961, although the United States Marshal, who held the proceeds of attachment involved in the motion, was represented by an Assistant United States Attorney. At the hearing the Municipal Court appears to have decided that the landlords were entitled to have their claims paid first out of the available funds, but it nevertheless ruled that "All executions against the funds in the hands of the United States Marshal shall be stayed until the termination of the aforementioned litigation in the United States District Court for the District of Columbia, Civil Action No. 3794–61," the proceeding now under review.

■■■ Appellee landlords argue that the ruling of the Municipal Court on their motion for payment of the proceeds of attachment is res judicata against the United States that their claim has priority. We cannot accept any such view. The United States cannot be estopped by a judgment to which it was not a party or in privity with a party. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The United States Marshal of course was involved only as an officer of the Municipal Court, i. e., as a stakeholder of the proceeds of the property seized and sold under the court's orders—not as a representative of the United States.

Furthermore, the Municipal Court appears to have thought that it may have been without power to deal with priorities, insofar as the United States is concerned, when the United States was not a party before it,[8] in any event, it stayed execution under its ruling until termination of the present suit. Our decision will prevent effectuation of execution under the ruling.

For the reasons given, the judgment of the District Court is vacated and the cause remanded to that court with directions to order the United States Marshal to satisfy the claim of the United States under its lien in full, before any payment is made to the landlords.

So ordered.

8. 26 U.S.C. § 7403 gives the United States authority to enforce its tax lien by filing a civil action in the District Court and making all persons having liens on or claiming an interest to the property involved parties thereto. By intervening as a plaintiff in the interpleader suit in the District Court, the United States followed the authorized procedure.