316 F.2d 687
 Mitchell STEVAN, Trustee for Genie Craft Corporation, Bankrupt, Appellant,
v.
UNION TRUST COMPANY OF the DISTRICT OF COLUMBIA, a Banking Corporation, and The Munsey Trust Company, a Banking Corporation, Appellees.
 No. 16865.
 United States Court of Appeals District of Columbia Circuit.
 Argued October 8, 1962.
 Decided March 28, 1963.
 
 COPYRIGHT MATERIAL OMITTED Mr. Frank J. Whalen, Jr., Washington, D. C., for appellant.
 Mr. William A. Glasgow, Washington, D. C., with whom Mr. John L. Hamilton, Washington, D. C., was on the brief, for appellees.
 Before BURTON, Justice, retired,* and FAHY and BURGER, Circuit Judges.
 BURGER, Circuit Judge.
 
 
 1
 An action was brought by the Trustee in Bankruptcy of Genie Craft Corporation[1] against a creditor[2] of the bankrupt to set aside certain transfers of customers' accounts. The District Court, sitting without a jury, determined that the challenged transfers were valid pledges and denied the relief sought by the Trustee.
 
 
 2
 Genie Craft sold at retail various household staples and appliances, including cooking utensils, sewing machines and encyclopedias in Maryland, Virginia and Washington, D. C. A large volume of its sales were made on conventional consumer installment credit terms with a small down payment and a negotiable promissory note for the balance. Beginning in June 1956, Genie Craft in turn financed its operations in part by pledging the installment notes to the Bank, which advanced funds up to 65% of the face amount of installment notes pledged.[3] The installment notes of customers were endorsed by Genie Craft in blank and delivered to the Bank, with recourse. Genie Craft gave its note to the Bank for the amount of advances made from time to time. As indicated the pledged customers' notes were collateral for the notes given by Genie Craft to the Bank. When the notes were endorsed in blank and delivered to the Bank, Genie Craft stamped its books and records showing the transfer to the Bank under the pledge. In addition the Bank designated Genie Craft as its agent for collection of the pledged installment notes, and routine collections continued to be received by Genie Craft in the regular course of business. However, as installments were received by Genie Craft on pledged notes they were deposited in a special account at the Bank under the designation "Genie Craft Corporation Loan Account." These deposits were applied to reduce the amount of the debt owed by Genie Craft to the Bank. At quarterly intervals Genie Craft submitted "aging" reports to the Bank listing the balance owing at the end of the quarterly period on each pledged customer's contract and note and the length of time since the last payment from each debtor. Periodically, the Bank sent one of its officers to the Genie Craft offices to check these quarterly reports against the ledgers maintained there.
 
 
 3
 Genie Craft had become insolvent on December 15, 1957, and remained insolvent until bankruptcy. The District Court found that the Bank had reasonable grounds to believe Genie Craft was insolvent on January 15, 1958. On that date the Bank called upon Genie Craft to pay its demand notes, with interest, not later than January 21, and advised the debtor that nonpayment would cause the Bank to resort to the installment notes pledged as collateral security for payment. On January 22 the Bank gave notice that the collateral, i. e., the pledged installment contracts and notes, would be sold on January 24. The sale was had and the proceeds were applied in partial satisfaction of Genie Craft's demand notes to the Bank. Between January 15 and 28, the Bank applied in partial satisfaction of the debts evidenced by the demand collateral notes, $9,750 from the special loan account and $119,586 from the proceeds of the sale of the collateral, leaving an unsatisfied balance of indebtedness at $94,866. As a result of this transaction the Bank received a greater percentage of payment on its demand notes than it would have received as a general creditor from a subsequent distribution in a bankruptcy proceeding.
 
 
 4
 A federal tax lien of $720 was assessed against Genie Craft on November 22, 1957, and notice of lien was filed in the District Court on February 11, 1958, after the Bank had foreclosed on its collateral. The tax lien was not paid by Genie Craft. Meanwhile on February 4, 1958, the petition in bankruptcy had been filed. The United States filed proof of claim for taxes on April 18, 1958.
 
 
 5
 * The primary contention made by appellant Bankruptcy Trustee is that the credit transactions between Genie Craft and the Bank resulted in a preferential transfer as defined in the Bankruptcy Act, § 60, sub. a and should have been set aside by the District Court for the benefit of the bankrupt estate under § 60, sub. b. 11 U.S.C. § 96, subs. a, b. Appellant contends that the case of Corn Exchange National Bank & Trust Co., Philadelphia v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943) is dispositive of this appeal. In support of his contentions appellant argues: (1) the credit transaction between Genie Craft and the Bank was an assignment of accounts receivable; (2) the local law of the District of Columbia gives greater right among successive assignees of the same fund to the one who first notifies the underlying debtor of the assignment; (3) the Bank was the first of a possible succession of assignees of the consumer notes and did not perfect its interest by giving notice to the underlying installment note debtors; (4) the assignment to the Bank was unperfected at the date of bankruptcy; as a result of these factors appellant urges that no transfer took place before the date of bankruptcy and thus the payment was a preferential transfer.[4]
 
 
 6
 The question presented resolves itself into a determination of when the transfer of installment notes from Genie Craft to the Bank occurred. The Bankruptcy Act, § 60, sub. a(2), 11 U.S.C. § 96, sub. a(2), provides:
 
 
 7
 "a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee."
 
 
 8
 This subsection requires us to examine the character of the transfer under local law. Although there is a dearth of authority on the point in this jurisdiction, a pledge and transfer of installment notes and contracts for purposes of security become perfected against a subsequent lien obtainable in legal proceedings on a simple contract, when the transferor has surrendered all dominion and control over the property, considering the character of the property and provided such surrender of dominion establishes a situation which will give notice to possible subsequent creditors of the transferor that the property has been pledged to another as security for a loan. Cf. Dollar v. Land, 87 U.S.App.D.C. 214, 184 F.2d 245, cert. denied, 340 U.S. 884, 71 S.Ct. 198, 95 L.Ed. 641 (1950).
 
 
 9
 We turn then to an examination of the record relating to Genie Craft's divestiture of dominion and control over the installment notes and contracts: (1) Genie Craft obtained negotiable installment notes from its consumer-debtors, rather than extending open account credit; (2) Genie Craft negotiated to the Bank the promissory notes of the consumers and delivered the installment notes and contracts of sale to the Bank; (3) the account books which remained at Genie Craft's place of business were plainly marked to indicate that the payee's property in those notes had been transferred to the Bank.
 
 
 10
 There was present, of course, some measure of apparent control in Genie Craft. Genie Craft was the Bank's agent for collection of the notes receivable which had been negotiated to the Bank. The obvious and primary purpose of this arrangement was to avoid the expense involved in having the Bank directly collect the numerous small installments from a large number of customers when the machinery for collection by Genie Craft was already in existence.
 
 
 11
 Our determination is necessarily influenced by the realities of business life. Multiple consumer accounts are not as readily made the subject of a bank pledge as a few large commercial accounts but the need for financing them is no less important. It is neither feasible nor necessary that the pledgee duplicate collection facilities in order to collect accounts from the installment note makers directly. The Bank's use of Genie Craft as its agent for collection would come into question only if that arrangement misled other creditors to their detriment because of some concealment or lack of disclosure. There is no evidence that any creditor made inquiry or was misled by appearances.
 
 
 12
 The facts of this case establish that Genie Craft was the agent for collection of the notes receivable, but was required by contract and did in fact remit collection promptly to a special account in the Bank. As an agent of the Bank, Genie Craft's failure to account to the Bank would be attended by consequences more severe than simple failure of a debtor to make payments on a contract debt. As collector, Genie Craft was a fiduciary.
 
 
 13
 The requirements that the debtor divest himself of dominion and control of the property which is security for the debt, in order to perfect the pledge lien, exist for the protection of subsequent creditors of the debtor. The rationale is that a second creditor cannot possibly rely on property for security when it is not under the dominion and control of the debtor and where reasonable inquiry directed to the apparent owner or to the pledgee of the property would establish that it is security for a prior debt. The mere fact that a note has been given affords no basis for a presumption that the payee remains the holder, especially where it is common business practice for installment sellers to finance their operations by pledges of installment notes. The relationship of the parties in light of known commercial custom was sufficient to put the creditors on notice of the possible existence of an intervening interest. A subsequent creditor could not in good faith assume the installment notes to be available to him as security without requiring them to be delivered into his possession. Obviously this could not be done in these circumstances without discovery of the existence of the security interest of the Bank. Even if the subsequent creditor did not demand the evidence that Genie Craft owned the notes, it would at least be bound to make some inquiry, such as examining the books of Genie Craft which would at once have revealed actual notice of the Bank's interests. See M. M. Landy, Inc. v. Nicholas, 221 F.2d 923, 929, 53 A.L.R. 2d 1385 (5th Cir., 1955); Gins v. Mauser Plumbing Supply Co., 148 F.2d 974, 977 (2d Cir., 1945).
 
 
 14
 The Trustee argues that the Bank's security interest was not perfected because of its failure to notify the underlying debtors, the consumers. The collateral security which ran from Genie Craft to the Bank consisted of negotiable promissory notes which were negotiated and as to which the Bank became a holder in due course and there was no further duty on the Bank to give notice to the makers to perfect its lien. D.C.Code Ann. §§ 28-203, 204 (1961); Thompson v. Franklin National Bank, 45 App.D.C. 218, cert. denied, 242 U.S. 637, 37 S.Ct. 21, 61 L.Ed. 540 (1916).
 
 II
 
 15
 The Trustee's second theory is based on his powers under § 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C. § 110, sub. e(1).[5] The Trustee contends that he may exercise the rights of the United States under its lien for taxes, Internal Revenue Code §§ 6321-23, because the government filed proof of claim for $720 in taxes, on April 18, 1958.
 
 
 16
 The federal lien for taxes, arising before bankruptcy, will prevail over the trustee when the Collector has taken possession of the personal property of the bankrupt. Goggin v. Division of Labor Law Enforcement, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543 (1949); United States v. Sands, 174 F.2d 384 (2d Cir., 1949). When the Collector has not taken possession as of the date of bankruptcy, as was true in this case, the tax lien is preserved, Bankruptcy Act, § 67, sub. b, 11 U.S.C. § 107, sub. b, but is subordinated in priority, § 67, sub. c, 11 U.S.C. § 107, sub. c. Since the federal government is a creditor of the bankrupt, Genie Craft, for unpaid taxes and did file proof of claim within the meaning of Section 57, sub. n of the Bankruptcy Act, 11 U.S.C. § 93, sub. n,[6] the Trustee may assert under Section 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C. § 110, sub. e(1), the rights of the federal government as a tax creditor of the bankrupt.
 
 
 17
 The Internal Revenue Code § 6321 creates a lien in favor of the federal government for unpaid taxes, which, upon assessment, attaches to all the property of the tax debtor and is prior in right to all liens which are not choate and perfected as of that date. United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955); United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. Gilbert Associates, Inc., 345 U.S. 361. 73 S.Ct. 701, 97 L.Ed. 1071 (1953). The federal tax lien is subordinated in priority to pledgees, mortgagees, judgment creditors and purchasers of the tax debtor who perfect their interest between the date of assessment and the date when the Collector files notice of lien in the appropriate district court. Internal Revenue Code § 6323. See United States v. Leventhal, 114 U.S.App.D.C. ___, 316 F.2d 341 (1963). See generally Schlesinger & Williams, The Federal Tax Lien, 36 N.Y. U.L.Rev. 1316 (1961).
 
 
 18
 The federal tax lien was assessed on November 22, 1957. Many of the notes receivable were transferred by Genie Craft to the Bank subsequent to that date and prior to the date when the notice of tax lien was filed in the District Court, February 11, 1958. As to those transactions which took place between the date of assessment and the date of filing notice of lien, the federal lien has a priority unless the Bank can establish itself as one of the four classes of protected creditors under Internal Revenue Code § 6323.
 
 
 19
 The Supreme Court has made it abundantly clear that federal law determines which secured creditors are pledgees, mortgagees, purchasers and judgment creditors for purposes of protection under § 6323. See, e. g., United States v. Scovil, supra; United States v. Gilbert Associates, Inc., supra. In United States v. Security Trust & Sav. Bank, 340 U.S. 47, 49-50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950), the court noted:
 
 
 20
 "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court."
 
 
 21
 In the ordinary course of affairs the initial determination of the character of the lien under state law is determined by a state court and that decision is final on the interpretation of state law. The question of federal law with regard to the definition of the four categories of creditors in IRC § 6323 is often determined by a state court in the first instance and ultimately by the Supreme Court. The fact that we sit as a federal court and as a local court for the District of Columbia does not change the bifurcated determination which must be made under § 6323. See United States v. Leventhal, supra.
 
 
 22
 The term pledgee must be given its usual meaning for purposes of § 6323. United States v. Toys of the World Club, Inc., 288 F.2d 89 (2d Cir., 1961). Cf. United States v. Gilbert Associates, Inc., supra. Our understanding of the pledge as a security transaction leads us to the conclusion that the appellee Bank is a pledgee for purposes of federal law as well as local law. See, e. g., M. M. Landy, Inc. v. Nicholas, supra; Gins v. Mauser Plumbing Supply Co., supra. Cf. Dollar v. Land, supra.
 
 
 23
 A pledgee within the terms of § 6323 is still subordinated to the tax lien if his security interest is not perfected before the notice of lien is filed in the District Court. The record before us establishes that the pledge to the Bank was perfected under federal law prior to the date of filing of notice of lien because the identity of the lienor, the property subject to the lien and the amount of the lien were determined as a result of the Bank's possession of the subject matter of the lien. All the usual commercial manifestations of endorsement, delivery and records of the facts of the transaction were completed. Cf. United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. Gilbert Associates, Inc., 345 U.S. 361, 366, 73 S.Ct. 701, 97 L.Ed. 1071 (1953). Indeed the Bank exercised a very high form of dominion and control when it sold the pledged security, pursuant to the terms of the loan agreement, on January 24, 1958, well before the notice of lien was filed on February 11, 1958.[7]
 
 III
 
 24
 The Trustee's third theory is that the transfer of the security from Genie Craft to the Bank was a fraudulent conveyance under the local law of the District of Columbia, D.C.Code Ann. §§ 12-401 — 12-403, and is subject to being set aside at the insistence of the Trustee by virtue of Section 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C., § 110, sub. e (1).
 
 
 25
 The controlling local law provides that transfers which are intended to hinder, delay or defraud creditors of the transferor are voidable at the insistence of a creditor who is hindered, delayed or defrauded. We must look to various facts to determine whether there was a fraudulent transfer: (1) Genie Craft was a retail outlet which extended credit to its customers and the Bank is a financial institution which extends credit in the ordinary course of business, including credit secured by pledges of notes receivable; (2) the negotiable purchase money notes were indorsed in blank, with recourse, and delivered by Genie Craft to the Bank, thereby making the Bank a holder; (3) the Bank extended credit ranging from 50% to 65% of the face value of the pledged notes to Genie Craft; (4) Genie Craft was the Bank's agent for collection pursuant to the loan agreement and remitted payments received to a special account at the Bank; (5) the balance in the special loan account was used to reduce the amount of the debt owed by Genie Craft to the Bank; (6) there is no evidence that Genie Craft retained or was permitted to retain any of the proceeds of collection; (7) Genie Craft submitted quarterly aging reports to the Bank indicating the status of collections from the consumer debtors and an officer of the Bank made a periodic audit of Genie Craft's records of collection; (8) the Genie Craft book accounts were stamped to indicate which consumer notes were pledged to the Bank and any creditor could have made an examination of the books a condition of extending credit; (9) there was no evidence of subjective fraud by Genie Craft and the Bank.[8]
 
 
 26
 The Trustee relies on the doctrine of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991 (1925). The nub of the doctrine is: "Under the law of New York a transfer of property as security which reserves to the transferor the right to dispose of the same, or to apply the proceeds thereof, for his own uses is, as to creditors, fraudulent in law and void." 268 U.S. at 360, 45 S.Ct. at 568. (Emphasis added.) This holding is readily distinguishable on its face. The conduct of the parties, Genie Craft and the Bank, as manifest on the record before us, indicates that Genie Craft did not retain any dominion over the pledged property incompatible with the existence of a security interest in the hands of the Bank and that neither Genie Craft nor the Bank engaged in any conduct which was calculated to or which did in fact defraud or mislead creditors.
 
 The judgment of the District Court is
 
 27
 Affirmed.
 
 
 28
 BURTON, J., concurs in the result.
 
 
 
 Notes:
 
 
 *
 Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.Code
 
 
 [1]
 Genie Craft was adjudicated a bankrupt in the United States District Court for Maryland. The Trustee qualified and was authorized to bring this suit against the Bank in the United States District Court for the District of Columbia
 
 
 [2]
 The defendant Union Trust Company [hereinafter referred to as the Bank] has acquired certain banking assets and has assumed certain liabilities of the Munsey Trust Company. Any liability established in this suit would be a liability of the Union Trust Company
 
 
 [3]
 On October 31, 1957, the amount loaned in this manner was reduced to 50% of the face amount of the pledged contracts and notes. Each note executed by Genie Craft authorized the Bank, upon default in payment of the note, to sell the collateral security at public or private sale, without demand, advertisement or notice
 
 
 [4]
 Both parties agree that the transfer to the Bank is preferential if the Bank failed to fulfill the requirement of Bankruptcy Act, § 60, sub. a(2), 11 U.S.C. § 96, sub. a(2). See Bankruptcy Act § 60, sub. a(7) (II), 11 U.S.C. § 96, sub. a(7) (II)
 
 
 [5]
 "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor."
 
 
 [6]
 See also Bankruptcy Act, § 64, (sub. a) (4), 11 U.S.C. § 104 sub. a(4)
 
 
 [7]
 Since we hold that the Bank was in a protected position of a pledgee and achieved prior rights against the tax lien, under the general provisions of Internal Revenue Code § 6323(a), we need not determine the applicability of § 6323(c) which gives special protection to inter alia, pledgees of securities as defined in § 6323(c) (2). See H.R.Rep. No. 855, 76th Cong., 1st Sess. p. 26 (1939)
 
 
 [8]
 The Trustee contends that the following facts establish his claim: (1) the aging reports showed only the period of time since the last payment and therefore would not reveal delinquent debtors who had made one recent payment; (2) the data was several weeks old before it was checked by the Bank's officer; (3) the Bank's officer submitted written reports to his superior on only two occasions; (4) Genie Craft retained and exercised the authority to compromise or cancel accounts without the consent of the Bank