Mrs. Sarah Jennings CARTER

v.

UNITED STATES of America ex rel. DIRECTOR OF INTERNAL REVENUE.

Civ. A. No. 2938.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Aug. 31, 1967.

Joel B. Dickinson, Baton Rouge, La., for plaintiff.

Louis C. LaCour, U. S. Atty., E. D. of Louisiana, New Orleans, La., A. A. Simpson, Jr., Dept. of Justice, Tax Division, Washington, D. C., for defendant.

Roy F. Cangelosi, Kizer, Heaton, Craig & Cangelosi, Baton Rouge, La., for Fidelity National Bank.

WEST, District Judge:

This is a civil action in which the plaintiff seeks to enjoin the District Director of Internal Revenue from seizing and selling certain real property to satisfy unpaid Federal income taxes assessed against her husband. The facts, for the most part, are undisputed. The plaintiff, Sarah Jennings Carter, and her husband, Hilton V. Carter, hereafter referred to as the "taxpayer," were married on April 17, 1954. Just prior to their marriage, i. e., on April 14, 1954, plaintiff and the taxpayer entered into a valid marriage contract in which they formally renounced the provisions of the Louisiana Revised Civil Code which otherwise would have automatically established, upon marriage, a community of acquets and gains between them as husband and wife. In this contract it was stipulated and agreed that all property owned by them at the time of their marriage and all property acquired by each of them after their marriage would be and remain their separate property. In their pre-nuptial marriage contract they each further reserved to themselves individually the administration of their separate estates and the right to separately enjoy the revenues therefrom. On June 11, 1955, plaintiff and taxpayer purchased the property in question, that is, a house and lot which they have since occupied as their home. The deed, on its face, conveyed the property to plaintiff and taxpayer jointly and plaintiff and taxpayer jointly executed a note and mortgage in favor of the Fidelity National Bank of Baton Rouge in the principal amount of $16,000, representing the unpaid portion of the purchase price A down payment in the amount of $10,000 was made at the time of purchase and was paid in the form of a check drawn on the personal account of the taxpayer. The monthly payments on the mortgage were $200 each, and all of these payments made between 1955 and 1964 were made by taxpayer from the earnings from his business known as Airline Auto Sales, Inc.

On July 21, 1961, pursuant to a decision of the United States Tax Court handed down on March 14, 1961, tax deficiencies in the sum of $102,918.69 were assessed against taxpayer, representing income tax deficiencies for the taxable periods 1948–1953. Notices of liens with respect to these assessments were filed and recorded in the office of the Clerk and Recorder for the Parish of East Baton Rouge, Louisiana, on September 14, 1961. No opposition being made to the assessment, a default judgment in the amount above stated was entered on April 13, 1966.

Some two years and three months after the deficiency assessments were levied against taxpayer, and two years and one month after the tax liens were recorded, taxpayer and plaintiff, on October 4, 1963, executed a Declaration of Homestead in which they designated the property here involved as their family home. This declaration was made in accordance with the provisions of Art. 11, § 1 and § 2 of the Louisiana Constitution of 1921, and LSA–R.S. 20:1. Section 1 of Art. 11 of the Louisiana Constitution provides, inter alia, that there shall be exempt from seizure and sale, except as otherwise provided therein, the homestead owned and occupied by the debtor, of every head of a family, or person having a mother or father or a person or persons dependent on him or her for support, to the total value of not more than $4,000. LSA–R.S. 20:1 sets forth the mechanics of claiming this exemption.

On October 8, 1963, taxpayer executed an "Act of Donation" by which he purportedly donated his one-half interest in the property to his wife, the plaintiff herein. Thereafter, on January 23, 1964, the property was seized by defendant and advertised for sale for non-payment by taxpayer of the delinquent income taxes as set forth above. This suit to enjoin the sale of the property followed.

The questions now before the Court are (1) is the property involved the separate property of the plaintiff, or the separate property of the taxpayer, or community

property belonging to plaintiff and taxpayer jointly, and (2) in either event, may the property be seized and sold in order to satisfy the Federal tax lien filed against the property of Hilton V. Carter despite the fact that a homestead exemption had been filed in connection therewith.

This Court concludes that the property in question was the separate property of the taxpayer, Hilton V. Carter, at the time the tax lien was recorded against it, and hence, regardless of the validity of the Act of Donation and regardless of the filing of the Declaration of Homestead, it was and is subject to seizure for payment of income tax deficiency assessment. In connection with these conclusions the Court makes the following Findings of Fact and Conclusions of Law in addition to those hereinabove set forth.

### FINDINGS OF FACT

1. The down payment of $10,000 made at the time the property in question was purchased was paid entirely out of the funds belonging to the separate estate of taxpayer. Plaintiff has woefully failed to prove by anything like a preponderance of the evidence that she had access to any funds of her own with which to make all or any part of this down payment.

2. Since prior to marriage, a valid marriage contract was entered into between taxpayer and plaintiff, renouncing all of the provisions of the Louisiana Revised Civil Code establishing a community of acquets and gains between husband and wife, there exists no such community of acquets and gains between taxpayer and his wife, plaintiff herein.

3. There being no community property resulting from this marriage, and the taxpayer and his wife, plaintiff herein, having also by their marriage contract reserved to themselves individually the administration of their respective estates and the enjoyment of the revenues therefrom, all of the earnings of taxpayer became his separate property, there being no community into which it could fall.

4. All monthly payments made on the note representing the unpaid balance due on the property were made by taxpayer out of his own earnings, which, as stated above, were entirely his separate property.

5. Thus, the property in question having been bought entirely with taxpayer's separate funds, it became his separate property, and remained as such at least until after the notices of liens were filed of record on September 14, 1961.

6. It was not until after the notices of liens were filed that an attempt was made by taxpayer to divest himself of ownership of the property and to place it beyond the reach of creditors. The Declaration of Homestead was not executed until October 4, 1963, and the Act of Donation was not executed until October 8, 1963.

7. There is no dispute about the fact that taxpayer owes unpaid, delinquent income taxes far in excess of the value of his equity in the property involved as is evidenced by the default judgment entered against him for the sum of $102,918.69, plus interest thereon from July 21, 1961.

### CONCLUSIONS OF LAW

1. The marriage contract, entered into prior to the celebration of marriage, in accordance with the provisions of La.R.C.C. Art. 2328 and Art. 2392, had the effect of preventing the formation of a community of acquets and gains between taxpayer and his wife that their marriage would otherwise have produced. La.R.C.C. Art. 2399.

2. Since there was no community of acquets and gains existing between taxpayer and his wife, the earnings of the taxpayer, out of which the property in question was paid for, became and remained his separate property. La.R.C.C. Art. 2386.

3. The Court thus finds, as a matter of law, that as of September 14, 1961, the date upon which the notices of liens were filed, the property in question was en-

tirely the separate property of the taxpayer, Hilton V. Carter.

4. When taxpayer failed to pay the income tax deficiencies assessed against him pursuant to the decision handed down by the United States Tax Court on March 14, 1961, and after demand had been made upon him for payment, the amount of the assessment became a lien upon all property and rights to property, real or personal, belonging to taxpayer, and the recordation of this tax lien on September 14, 1961, was notice to taxpayer and to the world of the existence of this lien. Int.Rev.Code of 1954, § 6321, § 6322, and § 6323.

5. When the taxpayer attempted by Act of Donation to transfer the property to his wife, he could not transfer any greater interest in the property than he himself had. The transfer could only be made subject to the Government's lien because the lien had attached to the property long before the Act of Donation was executed. No transfer of the property subsequent to the attaching of the lien could affect the rights of the lien holder as the property could then be transferred only subject to the lien. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); United States v. Leventhal, 114 U.S. App.D.C. 340, 316 F.2d 341 (CA 1963); Seaboard Surety Company v. United States, 306 F.2d 855 (CA 9–1962).

6. The filing of the homestead exemption by taxpayer and his wife after the lien had attached would likewise have no effect on the Government's lien. Furthermore, even had the Declaration of Homestead been filed before the levying of the tax lien, it would still not have affected the Government's tax lien because State exemption laws are not effective against Federal tax liens. United States v. Heasley, 283 F.2d 422 (CA 8–1960); United States v. Heffron, 158 F.2d 657 (CA 9–1947), cert. den. 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845; Shambaugh v. Scofield, 132 F.2d 345 (CA 5–1942). And the Louisiana courts have specifically held that the Louisiana homestead exemption law is not effective against a Federal income tax lien. Harvey v. Thomas, 239 La. 510, 119 So.2d 446 (1960).

For these reasons the preliminary injunction previously issued herein is hereby recalled, rescinded and set aside and judgment will be entered authorizing defendant to proceed, in accordance with law, with the advertising and sale of the property in question, said judgment to recognize, by agreement of counsel, the rights of the Fidelity National Bank of Baton Rouge, Louisiana, as the holder of a valid mortgage against said property with rights prior to those of the United States of America.

Judgment will be entered accordingly.