DOMENGEAUX, Judge.
Plaintiffs Port Drum Company, Inc. and Associates Financial Services Company, Inc. and defendants Joseph D. Racca, Jor *77 dan Wholesale Company, Inc., The First National Bank of Lake Charles, Mutual Warehouse Company, Inc. and John Deere Company were awarded separate money judgments against one James Mallett in the Thirty-First Judicial District Court of Louisiana in and for Jefferson Davis Parish.
Plaintiffs, after the time for taking sus-pensive appeals had elapsed, by proceedings in the Fourteenth Judicial District Court in and for Calcasieu Parish, Louisiana, had their judgments made executory in that parish. The five defendant judgment creditors as soon as they secured their judgments, had them certified by the Clerk of Court of Jefferson Davis Parish and caused them to be recorded in the Mortgage Records of Calcasieu Parish, Louisiana. The judgment of Port Drum Company, Inc. was secured on May 1, 1970 and made executory on May 26, 1970, and that of Associates Financial Services, Inc. was secured on May 15, 1970 and made execu-tory on June 22, 1970. The defendant judgment creditors Racca, Jordan, The First National Bank of Lake Charles and John Deere secured their judgments on May 1, 1970 and defendant judgment creditor Mutual Warehouse secured its judgment on April 28, 1970. Racca and Jordan recorded their judgments in Calcasieu Parish on May 1, 1970, The First National Bank recorded its in said parish on May 4, 1970 and Mutual Warehouse and John Deere recorded theirs on May 5, 1970 in Calcasieu Parish.
Plaintiffs ultimately filed this suit in the Fourteenth Judicial District Court in and for Calcasieu Parish, Louisiana against the above named defendants and the Clerk of Court of Calcasieu Parish on a rule to show cause why their judgments, which had been made executory, should not be declared superior to the judgments of the five defendant judgment creditors which had been inscribed on the Mortgage Records of Calcasieu Parish.
From the above, it is seen that none of the defendant judgment creditors of Mal-left sought to have their Jefferson Davis Parish judgments made executory in Cal-casieu Parish, but did have their judgments recorded in the Mortgage Records of Cal-casieu Parish. On the other hand, the two plaintiff judgment creditors did not have their Jefferson Davis Parish judgments recorded in Calcasieu Parish, but chose instead to have their judgments made execu-tory in said parish after the delays for sus-pensive appeal had run.
The trial court made plaintiffs’ rule absolute and declared their judgments superi- or to the judgments of the defendant.
Defendants, on appeal, pray that the judgment of the trial court be reversed and that plaintiffs’ rule be dismissed.
The basic issue herein is as follows: Did the trial court err in applying the procedural devices of execution of judgments and thereby ignore the substantive law relating to judicial mortgages?
A review of the Civil Code articles pertaining to mortgages shows that they are either conventional, legal or judicial (C.C. Article 3286); that judicial mortgages take effect from the day the judgment is recorded (C.C. 3322, 3329); that the inscription of mortgages only binds the property of the debtor when it has been made in the office of mortgages for the parish where the property lies, and if the debtor has immovable property lying in more than one parish, the inscription ought to be made in the office of mortgages for each of them. (C.C. 3346); that no mortgage shall affect third parties unless recorded in the parish where the property to be affected is situated (C.C. 3347); and that any person entitled to a mortgage or privilege on the property of another person must cause the evidence of such mortgage or privilege to be recorded in the mortgage book of the parish where the property is situated (C.C. 3348).
A reading of the mortgage articles makes it apparent that the judicial mortgage, just as the conventional or legal *78 mortgage, is effective against third persons from the date of its inscription in the Mortgage Records of any parish in which the immovable property of the debtor is located. Once the mortgage is recorded, it primes all subsequent recorded mortgages. Under the provisions of Civil Code Articles 3342 and 3346 inscription of the mortgage by the recorder of mortgages is the only requirement to convey to the mortgagee his privilege.
In the early case of Succession of Dickson, 37 La.Ann. 795, the Louisiana Supreme Court held that judgments recorded in different parishes operate as judicial mortgages upon the land in each parish from their respective dates of recordation. To this effect, see also Harvey v. Thomas, 239 La. 510, 119 So.2d 446; Central Savings Bank & Trust Co. v. Tucker, 182 La. 289, 161 So. 759; Courshon v. Mauroner-Craddock, Inc., La.App., 219 So.2d 258.
In reaching its decision the trial court relied upon the provisions of Code of Civil Procedure Articles 2252 and 2781. Code of Civil Procedure Article 2252 reads:
“A judgment creditor may proceed with the execution of a judgment only after the delay for a suspensive appeal therefrom has elapsed.”
Code of Civil Procedure Article 2781 states:
“A judgment rendered in a Louisiana court may be made executory in any other Louisiana court of competent jurisdiction, if its execution has not been and may not be suspended by appeal.”
The trial court concluded that should the defendant judgment creditor wish to proceed by foreclosure on the debtor’s property in Calcasieu Parish, then in that event, it would have to make its judgment execu-tory in that parish. We believe the trial court has committed error in this regard in view of the plain expression of our Civil Code articles on judicial mortgages referred to hereinabove; and further, a reading of comment “B” to the Code of Civil Procedure Article 2781 indicates a conclusion contra to that of the trial court’s. That comment is quoted as follows:
“(b) Ordinarily the judgment rendered by another Louisiana court will be enforced through the writ of fieri facias authorizing the sheriff where the debt- or’s property is located to seize and sell it under this writ to satisfy a judgment. Art. 642, Code of Practice of 1870; Lafon v. Smith, 3 La. 473 (1832). Hence, usually there is no necessity to make the judgment of another Louisiana court ex-ecutory. There are two instances where it is absolutely necessary to make the judgment of the other court executory: (1) in garnishment proceedings under the writ of fieri facias, where the garnishee is domiciled in another parish, Art. 2416, supra; and (2) in the examination of a judgment debtor domiciled in a parish other than the one in which the judgment was rendered. Art. 2452, supra.” (Italics for emphasis.)
We see from this comment that even in the case of an execution on a judgment, there are only two instances where it is necessary to make a judgment executory in another parish, those instances being in situations having to do with judgment debtors and in garnishment situations. We are concerned with neither of these in this case.
When the five defendant judgment creditors recorded their judgments in Cal-casieu Parish they were merely protecting their privileges as to any immovable property which the debtor James Mallett might own in Calcasieu Parish. There was no need for and no requirement that these defendant judgment creditors make their judgments executory. As indicated there-inabove, all that was required of them for their protection was the inscription of their judgments in the Mortgage Records of Calcasieu Parish, which they did shortly after securing their Jefferson Davis Parish judgments.
*79 Plaintiffs appellees argue however, that because the defendants recorded their judgments prior to the running of the delays for a suspensive appeal they did not follow the formalities of Article 2252 of the Code of Civil Procedure and that consequently their judgments must be declared null. They cite as authority therefor the cases of Dannenmann & Charlton v. Charlton, 113 La. 276, 36 So. 965; Cluseau v. Wagner, 126 La. 375, 52 So. 547; Denny v. Jefferson Construction Co., 164 La. 775, 114 So. 650; Kimber-Murphy Mfg. Co. v. Vestal, Inc., 43 So.2d 508 (La.App.2d Cir. 1949). These cases involve execution of judgments, with which we are not concerned herein, but even accepting the analogy arguendo, these cases are easily distinguished.
All the cases that have been cited by plaintiffs except Kimber-Murphy Mfg. Co. v. Vestal, Inc., supra, deal with the situation wherein a suspensive appeal had in fact been taken by the judgment debtor and the court held the creditors’ recorded judgment to be of no effect. In Dannen-mann & Charlton v. Charlton, supra, the court ordered the judicial mortgage can-celled from the mortgage records after a suspensive appeal had been taken within the required delays. In Cluseau v. Wagner, supra, the creditor recorded his judgment within the delay period for a suspen-sive appeal. The debtor then perfected an appeal within the delay period but after the recordation of the judgment. The court held the judicial mortgage to be without effect because the appeal had been properly taken and the matter was then before the appellate court. Denny v. Johnson Construction Co., supra, held that a judicial mortgage cannot be created whether recorded before or after the date the appeal was perfected during the pendency of the appeal.
None of the cases cited are analogous to the situation in this case because, as we are led to understand, neither a sus-pensive nor a devolutive appeal has ever been taken by James Mallett from the judgments awarded the five defendant creditors. Under the rationale of City Electric & Supply, Inc. v. Taft Park Homes, Inc., La.App., 225 So.2d 293, and the numerous cases cited therein, even though the five defendant judgment creditors were premature in having their Jefferson Davis Parish judgments recorded in Calcasieu Parish prior to the running of the time allowed for suspensive appeals, this irregularity is corrected and waived inasmuch as the lapse of the time for appeal has subsequently taken place. This premature recording is, at worst, a relative nullity which was cured once the time for the taking of suspensive appeal had run. The judgment of Port Drum Co., Inc. was not made executory until May 26, 1970 and that of Associates Financial Services Co., Inc. until June 12, 1970, both dates being after the time had run for the taking of suspensive appeals in the case of the aforementioned judgments of the five defendants. Nevertheless appellees argue that the above rule contemplates only a creditor-debtor relationship and is not applicable as against third parties who have acquired claims to the property of the judgment debtor. They rely on the Kimber-Murphy case, supra, wherein Kimber-Murphy was allowed the proceeds of a Sheriff’s Sale of a common debtor over the claims of Vestal, Inc., even though Vestal had recorded its judgment prior to Kimber, because the delays for a suspensive appeal had expired against Kimber’s judgment whereas the delays had not run against Vestal’s judgment. This situation is not analogous to the case herein. As shown, when appellees made their judgments executory the delays for suspensive appeals had expired as to the judgments of the five defendant creditors. Appellees did not acquire any rights to property during this’ interim and cannot now claim that they were prejudiced by the recordation of the five defendant judgments in Calcasieu Parish. When defendants recorded their judgments in the latter parish, they were merely protecting their privileges and rank on the property of the *80 common debtor James Mallett located m that parish, which privilege and rank is governed as aforesaid, by the date of rec-ordation.
Accordingly, for the above and foregoing reasons, the judgment of the trial court is reversed and the rule to show cause issued by plaintiffs is hereby recalled and their suit dismissed.
Costs in both this court and the trial court to be paid by plaintiffs-appellees.
Reversed and rendered.