**In re Evelyn LITWOK, Debtor.**

No. 99–CV–3936.

United States District Court,
E.D. New York.

March 3, 2000.

Flower & Medalie, Bay Shore, NY (by Jeffrey Herzberg, of counsel), for Debtor/Appellant.

Cadwalader, Wickersham & Taft, New York City (by H. Peter Haveles, Jr., and Susan F. DiCicco, of counsel), for Creditor/Appellee, Republic New York Securities Corp.

**4**

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is Debtor/Appellant Evelyn Litwok's appeal from a finding by United States Bankruptcy Judge Francis Conrad, pursuant to 11 U.S.C. § 523(a)(6), that a debt of more than $2.3 million, owed by Litwok to Creditor/Appellee Republic New York Securities Corp. ("Republic"), was not dischargeable in bankruptcy because it was the result of willful and malicious conduct by Litwok.

### BACKGROUND

On April 10, 1996, Litwok, on behalf of herself, Kohn Investment Management, Inc. and numerous other parties, filed a $1.5 billion claim against Republic before a New York Stock Exchange ("NYSE") arbitration panel. According to the parties' statement of uncontested facts submitted to the Bankruptcy Court, Litwok concedes that the arbitration claim was "based on unsubstantiated allegations of fraud...." On twelve days over the course of 1997, an arbitration panel heard testimony and took evidence from both sides. On October 30, 1997, Litwok testified before the arbitration panel and denied an allegation by Republic that she had fabricated certain diaries and trading records that she had offered in evidence to support her claim. That same day, Republic offered into evidence a series of tape recorded conversations between Litwok and a co-worker that contradicted Litwok's denials. Those tape recordings are at the heart of the issues before this Court.

Litwok challenged the authenticity of the tape recordings before the arbitration panel, asserting that they were electronically edited and manufactured by the co-worker. Nevertheless, the panel received the tapes in evidence and played them at the October 30, 1997 hearing date. At a hearing session on December 2, 1997, Republic offered into evidence an expert's report validating the integrity of the tapes. Litwok persisted in her objection to the admission of the tapes, and the panel afforded her a 60–day continuance to produce evidence disputing the reliability of the tapes. The continuance was conditioned upon Litwok's payment, within 10 days, of then-unpaid forum fees from the previous days of the hearing. Litwok failed to make the required payment, and on January 26, 1998, with no additional hearing sessions having been held since December 2nd, the panel informed both sides that the hearing was considered closed and that an award would be forthcoming.

Three days later, on January 29, 1998, Litwok filed a Chapter 11 petition in the Bankruptcy Court. On February 10, 1998, the arbitration panel issued an award that reads, in part

(1) The Statement of Claim in the above matter is hereby dismissed with prejudice in all respects. The Arbitrators find that the claims in this matter were without foundation and not supported by credible evidence, and constitute a fraud perpetrated against the New York Stock Exchange and the Respondents.

(2) Claimants [except Litwok] shall pay to Republic New York Securities Corporation the sum of $2,309,639.00 as attorneys fees and costs incurred in defending the Statement of claim ...

(3) The arbitrators were prepared to assess attorney's fees, costs, and forum fees against Evelyn Litwok as well but do not do so because of the stay resulting from her filing of a petition in bankruptcy on January 29, 1998. The issue of the assessment of attorney's fees, costs, and forum fees against Evelyn Litwok is referred to the United States Bankruptcy Court for resolution.

Republic filed a proof of claim in Litwok's action in the amount of $2,309,639.00. Litwok never filed an objection to Republic's proof of claim. In June 1998, on Republic's application, the automatic stay was partially lifted by the Bankruptcy Court to

allow Republic to proceed in New York State Supreme Court to confirm the arbitration award. Simultaneously, Republic filed a complaint in the Bankruptcy Court to have the debt deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). On October 20, 1998, Justice Stanley Sklar of the Supreme Court, New York County confirmed the award. On January 14, 1999, the Bankruptcy Court held an evidentiary hearing on Republic's complaint, and at the close of that hearing, Judge Conrad found that Litwok's filing had been wilful and done with malice, and that the debt to Republic was therefore non-dischargeable.

Litwok appeals from this finding to this Court. She assigns several points of error to Judge Conrad: (i) that Judge Conrad erred by allowing the tapes and the transcripts of the tapes to be introduced at the non-dischargeability hearing; (ii) that Judge Conrad erred in admitting the transcript of the October 30, 1997 arbitration hearing because it contained inadmissible evidence; (iii) that Judge Conrad placed inappropriate reliance on the findings of the arbitration panel; (iv) that the Bankruptcy Court abused its discretion by proceeding with the hearing after Litwok's attorneys filed a request to withdraw as her counsel; (v) that Judge Conrad abused his discretion in denying Litwok's motion for a new trial because her expert witness regarding the tape recordings was stuck in traffic and the court refused to grant her request for a continuance; and (vi) that the evidence failed to establish that Litwok's conduct was "wilful" as defined by 11 U.S.C. § 523(a)(6).

## DISCUSSION

■ A district court hearing an appeal from a Bankruptcy Court reviews that Court's findings of fact under the "clearly erroneous" standard, see Fed. R. Bankr. 8013, while its conclusions of law are reviewed under the *de novo* standard. *See In re Arochem Corp.*, 176 F.3d 610, 620 (2d Cir.1999); *In re Bennett Funding Group,*

*Inc.*, 146 F.3d 136, 138 (2d Cir.1998); *See also In re Porges*, 44 F.3d 159, 162 (2d Cir.1995).

■ Republic filed a proof of claim against Litwok based on the $2.3 million debt, and Litwok filed no objection. Therefore, the debt is deemed allowed. *In re 183 Lorraine St. Assocs.*, 198 B.R. 16 (E.D.N.Y.1996) (a properly filed proof of claim is prima facie evidence of amount and character of debt and, absent objection by the debtor, is deemed allowed).

### A. As to the admissibility of the tape recordings, tape transcripts, and arbitration hearing transcripts.

Most of Litwok's arguments relate to the inadmissibility of the tape recordings and the transcripts of those tapes. However, the transcript of the non-dischargeability hearing indicates that Litwok's objection to the admission of Exhibit K, the tape recordings, was sustained, *see Transcript of 1/14/99 hearing*, p. 31, and the tape recordings were never received into evidence. Moreover, while the transcript does indicate that Judge Conrad was able to review transcriptions of the tape recordings, *id.* at 32, it is clear that Judge Conrad was reviewing Exhibit C, which is the transcript of the October 30, 1997 arbitration hearing where the tapes were played, not separate transcribings of the tapes offered as a separate exhibit.

■ Litwok's only objections to the receipt of Exhibit C at the non-dischargeability hearing was that no foundation had been laid for its admission and that the transcript was not a certified copy of the original; objections that she does not press here on appeal. *See Jacquin v. Stenzil*, 886 F.2d 506, 508 (2d Cir.1989) ("specificity in an evidentiary objection is also required in federal courts to preserve an issue for appeal"). At no time did Litwok raise any of her current hearsay or best evidence objections to the receipt of Exhibit C. *See* Fed R. Evid. 103(a)(1) (specific ground for objection must be stated to

preserve it); *compare Transcript of 1/14/99 hearing* at 13–14, 16 (Litwok's objections to admission of Exhibit C) *with* 31 (Litwok raising best evidence and hearsay objections to admission of tapes).

In her reply brief, Litwok argues that she *did* preserve an objection to the receipt of Exhibit C, the arbitration hearing transcript. When Exhibit C was first offered by Republic's counsel, Litwok's counsel made the following objection:

> MR. HACKELING: There is no foundation that's been established. It is not an original certified copy of the document. This witness can testify to what he heard, if he attended the hearing, but he can't lay the foundation to introduce this document which he did not prepare.

Judge Conrad sustained this objection, and also indicated that he found the document not relevant. Republic's counsel then laid a foundation that at the October 30, 1997 arbitration hearing, tapes were played for the arbitration panel, Litwok was questioned on the content of the tapes, and based on Litwok's answers, Republic moved to dismiss the arbitration claim. Republic's counsel also established that Exhibit C accurately reflected the proceedings before the arbitration panel on October 30, 1997. After laying this foundation, Republic renewed its offer of Exhibit C for admission. Litwok's counsel asserted "same objection," which Judge Conrad overruled.

Litwok's counsel's objection to the admission of Exhibit C clearly does not contain a hearsay objection. He only objected to the foundation laid for the document—that Republic has failed to establish that the document accurately reflects what transpired at the hearing. Litwok's suggestion that this objection can somehow be read to raise a hearsay objection based on the inclusion of the tape recordings in the transcription tortures the actual words used by her counsel. More telling, however, is that after admitting Exhibit C, Republic's counsel then sought to offer Exhibit E, a transcript of anoth-er day's arbitration testimony where no tapes were played. After laying a foundation for the introduction of Exhibit E, Litwok's counsel stated "same objection, same basis, your Honor," referring back to the objections raised to the admission of Exhibit C. *Transcript of 1/14/99 hearing* at 18. If Litwok contends that her counsel's objection to Exhibit C incorporated a hearsay objection to the tape transcription, she could not have interposed the "same objection" to another exhibit offered by Republic that did not contain such transcriptions.

Moreover, Litwok misinterprets the holding of *McDonald v. City of West Branch*, 466 U.S. 284, 292 n. 13, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). Contrary to Litwok's suggestion that *McDonald* sets out a rule governing the *admission* of *evidence* received at an arbitration, *McDonald* addresses the factors to be considered in affording *weight* to an arbitrator's *findings. Id.* ("We adopt no standards as to the *weight* to be accorded an arbitral *decision*, since this must be determined in the court's discretion with regard to the facts and circumstances of each case.") (emphasis added). The Court in *McDonald* clearly indicated that "an arbitral decision may be admitted as evidence," *id.*, citing prior Supreme Court precedent establishing that such admission was permissible. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60, 94 S.Ct. 1011, 39 L.Ed.2d 147 ("The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate.")

Based on the fact that the tape recordings or tape transcripts were never received in evidence, and that Litwok did not preserve any of her present objections to the receipt of Exhibit C, the arbitration hearing transcript, her assignments of error based upon the "admission" of those items are without merit.

■ In her reply brief, Litwok contends that, even if she failed to object to the admission of Exhibit C on hearsay

grounds, such a failure constitutes "plain error." Plain error review is a drastic remedy that should be limited to extraordinary circumstances or where the denial of review would result in a plain miscarriage of justice. *Stringel v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 415, 421 (7th Cir.1996); *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir.1993); *U.S. v. Williams*, 132 F.3d 1055 (5th Cir.1998). In the Second Circuit, plain error exists only "where the error may result in a miscarriage of justice or in obvious instances of misapplied law." *Johnson v. New York Hospital*, 96 F.3d 33, 34 (2d Cir.1996); *Care Travel Co. v. Pan American World Airways*, 944 F.2d 983, 995 (2d Cir.1991). Such an error is one "so serious and flagrant that it goes to the very integrity of the trial." *Modave v. Long Island Jewish Medical Center*, 501 F.2d 1065, 1072 (2d Cir.1974). The Second Circuit also cautions that the plain error exception "should only be invoked with extreme caution in the civil context," and only where the "unpreserved error [is] so serious and flagrant that it goes to the very integrity of the trial." *Pescatore v. Pan American World Airways*, 97 F.3d 1, 18 (2d Cir.1996). Among the factors considered by the court in analyzing a plain error claim is whether counsel had ample opportunity to object to the ruling in question. *Care Travel*, 944 F.2d at 996.

■ On this basis, this Court finds that the admission of the arbitration transcript did not constitute plain error. Importantly, Litwok had several opportunities to raise an objection to the admission of Exhibit C. The record indicates that the parties exchanged exhibit lists several days prior to the non-dischargeability hearing, and Litwok was thus put on notice that Republic intended to offer the October 30, 1997 hearing transcript. *See Stringel*, 89 F.3d at 421–22 (where a party was aware that his opponent might rely on an allegedly unreliable tape, that party's failure to object to the tape at the time it was presented to the court was a factor weighing against a plain error finding). In addition, Litwok had at least two more opportunities to raise a proper hearsay objection to the document at the hearing. These circumstances weigh in favor of rejecting any plain error argument.

Moreover, this Court does not find that the error, if there was any, in admitting the transcript was so severe as to rise to the level of "a miscarriage of justice." Litwok had testified in person before Judge Conrad and vigorously insisted that the tapes were fabricated. It is also clear that, based on Litwok's contentions, Judge Conrad viewed the contents of the tapes with considerable skepticism. Judge Conrad's ultimate decision centers around evidence independent of the tapes that confirms that Litwok fabricated the evidence presented at the arbitration hearing. For example, Judge Conrad was troubled by an exhibit—a letter dated May 27, 1997 from Republic's counsel that *Litwok* offered in evidence—which indicated that Litwok had continuously maintained that no contemporaneous trading records existed until such records were suddenly "discovered" simultaneously with Litwok's preparation of the first calculation of her alleged damages. The contradicting position taken by Litwok regarding whether such records were ever created and the fortuitous discovery of the previously "nonexistent" records would, of itself, have been enough to allow Judge Conrad to infer that the documents were fabricated.

Thus, the Bankruptcy Court could have found that Litwok's arbitration claim was fraudulent without relying on the hearing transcript. In addition, when Litwok took the stand to dispute the arbitration panel's findings, Judge Conrad found her testimony to be inconsistent and incredible, further supporting a finding in Republic's favor. Because Judge Conrad's decision can be supported in the record without relying on the arbitration hearing transcript, this Court finds that if admitting that transcript was error—a finding this Court does not pass on at this time—such an error

does not amount to a miscarriage of justice.

Therefore, even if this Court were to engage in a plain error analysis, Judge Conrad's admission of the arbitration hearing transcript did not constitute plain error.

### B. As to the Bankruptcy Court's reliance on the arbitration decision

Litwok also objects to Judge Corman's reliance upon the findings of the NYSE arbitration panel.

■ The record is clear that Judge Conrad conducted a de novo review of the arbitration proceedings, and did not place undue reliance on the arbitration panel's decision. As the Supreme Court in *McDonald* stated, the question of how much weight to give an arbitration decision is within the reviewing court's discretion. 466 U.S. at 292 n. 23, 104 S.Ct. 1799. Specifically, the Court stated that

> [w]here an arbitral determination gives full consideration to an employee's [statutory or constitutional] rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever be mindful that Congress ... thought it necessary to provide a judicial forum for the ultimate resolution of [these] claims. It is the duty of courts to assure the full availability of this forum.

*Id. citing Gardner–Denver,* 415 U.S. at 60 n. 2, 94 S.Ct. 1011.

■ In light of this standard, Judge Conrad was entitled to place great weight on the arbitration panel's decision, as that finding was one of fact—namely, that Litwok filed a false claim based on deliberately fabricated evidence—that the parties specifically addressed and the arbitrators decided based on an extensive record, including testimony by both sides and a continuance granted to Litwok to obtain additional evidence.

■ Moreover, the record of the non-dischargeability hearing indicates that Litwok had the "full availability" of that forum as well. Litwok took the stand at the non-dischargeability hearing and testified in her own defense; denying that her complaint was fraudulent and claiming that the tapes introduced at the arbitration hearing were edited. Judge Conrad's oral decision indicates that he independently reviewed the arbitration hearing transcript and contrasted Litwok's testimony in that hearing with her live testimony in the non-dischargeability hearing. It is clear from the record that Judge Conrad's ultimate decision was based heavily on his finding that Litwok's testimony in the bankruptcy proceeding lacked credibility, and that he placed little reliance on the findings of the arbitration panel. Thus, this Court finds that Judge Conrad did not give excessive weight to the arbitration decision.

### C. As to the notice to withdraw by Litwok's counsel

Litwok also seeks reversal of Judge Conrad's decision on the grounds that her attorney had filed a motion to withdraw during the bankruptcy proceedings. She alleges that the Bankruptcy Court committed error by holding the non-dischargeability hearing without first holding a hearing to inquire about the alleged "conflict of interest" between her and her counsel.

The Court has reviewed the application to withdraw by Litwok's counsel, which is dated January 6, 1999, approximately a week before the non-dischargeability hearing was held, and lists a return date of January 26, 1999. The grounds cited by Litwok's attorney for withdrawing are (i) the fact that counsel was retained for purposes of a single Chapter 11 proceeding, which subsequently blossomed into four contested Chapter 7 proceedings; (ii) that Litwok retained her attorney under false pretenses by falsely stating that pending criminal proceedings against her that

would affect her ability to testify in a bankruptcy proceeding were in the process of being closed; and (iii) that Litwok had been uncooperative in supplying requested information and attending meetings.

Litwok is correct that, once alerted to the possibility of a conflict of interest, the Bankruptcy Court "must satisfy itself that no conflict of interest exists." *In re Fischer,* 202 B.R. 341, 352 (E.D.N.Y.1996). An actual, relevant conflict of interest occurs if, during the course of the representation, the attorney's and client's interests diverge with respect to a material factual or legal issue or to a course of action. *U.S. v. Malpiedi,* 62 F.3d 465, 469 (2d Cir.1995). In criminal cases, the Second Circuit has held that an attorney's motion to withdraw from representation for a client's failure to pay fees does not create a conflict of interest. *U.S. v. Luciano,* 158 F.3d 655, 661 (2d Cir. 1998); *U.S. v. O'Neil,* 118 F.3d at 61, 72 (2d Cir.1997).

In light of cases like *Luciano* and *O'Neil,* in which the court found no conflict despite the attorney's pecuniary interest in being paid and the enhanced Sixth Amendment scrutiny required in criminal cases, this Court does not find that Litwok has shown any actual conflict existed between her and her attorneys due solely to her alleged failure to cooperate. Nothing in Litwok's attorney's motion to withdraw indicates that the attorney had any significant interest that conflicted with Litwok's interests, but merely that Litwok's conduct had made representation more difficult. Moreover, the moving papers expressly indicate that, despite Litwok's lack of cooperation, her attorney was prepared to go forward with the scheduled non-dischargeability hearing. In addition, although Litwok's attorney claimed that the ongoing criminal investigation made it difficult to represent her in the non-dischargeability hearing, the record shows that Litwok had criminal counsel present at the bankruptcy hearing. It is also clear that both her criminal counsel and her bankruptcy attor-

ney advised her against taking the stand in the bankruptcy proceeding, and that she made her own decision to ignore that advice.

On these facts, this Court finds that no conflict of interest existed and Judge Conrad had no obligation to hold a hearing on the motion by her counsel to withdraw prior to holding the non-dischargeability hearing.

### D. As to the failure to grant a continuance to accommodate Litwok's witness

Litwok separately appeals from Judge Conrad's denial of a motion for a new trial, which was made after Judge Conrad refused a continuance to accommodate her expert witness on the authenticity of the tape recordings whose arrival at the courthouse had been delayed by traffic resulting from bad weather.

Whether a request for a continuance should be granted is a question within the sound discretion of the Bankruptcy Court. *Wachovia Bank of Georgia v. Apex Tech of Georgia,* 144 B.R. 649, 652 (S.D.N.Y.1992), *citing Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). A decision denying a continuance should only be overturned upon a showing of an abuse of discretion which substantially impairs the ability of the appealing party to litigate effectively. *Id.* Among the factors to be considered in making that determination are the extent to which the additional evidence sought would be valuable enough to warrant the delay in adjourning the proceedings, and whether the requesting party acted with proper diligence in attempting to secure the presence of the witness. *Id.*

In determining the value of the evidence Litwok would have presented if the continuance had been granted, this Court observes that her brief states "if the expert was able to testify, he would have stated that unless the original tape record-

ing was examined, it would be improbable that the human ear could detect deletions or modifications of the telephone conversations based on the duplicate tape recordings." It is not clear from this statement whether the expert had personally examined the tape recordings at issue or whether he just would have testified generally about how tapes can be edited. In either event, this Court finds that this evidence would have minimal value to the case. Litwok herself testified that she had personal knowledge that the tapes were fabricated, and thus, her expert's testimony would have merely been cumulative. In addition, Judge Conrad later stated that "I had some concerns about the authenticity of the tapes ... and it is entirely possible, in this day and age, to fabricate a conversation of someone on tapes based on bits and pieces of other conversations over the years," and that "I'm looking at [the transcription of the tape] with a very jaundiced eye," before finding that the tapes merely corroborated other evidence that independently established Litwok's fraud. What minimal value the expert's testimony would have had is weighed against the fact that Litwok requested a 30-day continuance, which would have significantly delayed the determination of the issue. Therefore, this Court finds that the value of the evidence did not outweigh the burden of granting a continuance, and that Judge Conrad committed no error by refusing Litwok's request.

▬ Further, Litwok admittedly did not name the expert on her witness list prior to the non-dischargeability hearing, in violation of Judge Conrad's pre-hearing order requiring her to list all of her primary and expert witnesses. Based on her failure to comply with the Bankruptcy Court's pre-hearing order, Judge Conrad was justified in refusing a continuance to permit an undisclosed witness to testify. Thus is especially so in view of Litwok's request for a lengthy continuance.

Therefore, this Court finds no error in Judge Conrad's denial of new trial based on the expert's failure to appear, and Litwok's appeal of that denial is without merit.

### E. As to the finding of wilful and malicious injury under 11 U.S.C. § 523(a)(6)

Finally, Litwok challenges the Bankruptcy Court's finding that her debt to Republic was a "malicious injury" under 11 U.S.C. § 523(a)(6).

▬ A creditor seeking to have a debt declared non-dischargeable under Section 523 must establish the elements of the statutory exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112.L.Ed.2d 755 (1991). As discussed above, a creditor proceeding under Section 523(a)(6) must establish that the debt was the result of "willful and malicious injury." Thus, the creditor must demonstrate "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau*, 523 U.S. at 61, 118 S.Ct. 974. In addition, the creditor must show that the act was "malicious," in that it was wrongful, even if it was not motivated by ill-will or spite. *In re Stelluti*, 94 F.3d at 87–88; *In re Krautheimer*, 241 B.R. 330, 340–41 (Bankr.S.D.N.Y.1999), *quoting In re Mitchell*, 227 B.R. 45, 51 (Bankr. S.D.N.Y.1998) (malice "can be implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.")

▬ Judge Conrad made several factual findings that this Court must adopt unless they are "clearly erroneous." Fed. R. Bankr. 8013. Litwok has not argued that Judge Conrad's factual findings are clearly erroneous, and thus, this Court adopts the findings that Litwok filed a $1.5 billion complaint with the NYSE against Republic; that Litwok fabricated evidence to support that complaint; and that the arbitration panel found that the complaint

was fraudulent and filed in bad faith. In addition, Judge Conrad found that Litwok's testimony was not credible.

In light of these findings, this Court finds that Republic has established the elements of non-dischargeability under Section 523(a)(6) by a preponderance of the evidence. Litwok's actions in filing the complaint were intentional and were clearly intended to cause injury to Republic, in that Litwok sought to secure an enormous judgment against Republic that she was not legally entitled to. Moreover, her actions were malicious as that term is defined by the Second Circuit in *Stelluti*. Any reasonable person would recognize that forging and concocting evidence, and then using that evidence in a quasi-judicial proceeding in an attempt to obtain a judgment against an innocent party is wrongful and injurious to others.

Based on these findings, the Court finds that Republic sufficiently established that Litwok's debt was not dischargeable under 11 U.S.C. § 523(a)(6).

### CONCLUSION

Based on the foregoing, Litwok's appeal of Judge Conrad's January 14, 1999 decision that her debt to Republic is not dischargeable is DENIED. Litwok's motion for a new trial is DENIED. The decisions of Judge Conrad are AFFIRMED in all respects. The Clerk of the Court is directed to close this case.

**SO ORDERED.**