In re NERLAND OIL, INC., Debtor.

Superpumper, Inc., Plaintiff,

v.

Nerland Oil, Inc. and the United States of America through the Internal Revenue Service, Defendants.

Bankruptcy No. 99–31826.
Adversary No. 00–7021.

United States Bankruptcy Court,
D. North Dakota.

Oct. 20, 2000.

Order Certifying as Final Judgment
Sept. 19, 2001.

Kip M. Kaler, Fargo, ND, Bankruptcy Trustee for the Estate of Nerland Oil.

Jay D. Carlson, Fargo, ND, for Nerland Oil.

John Petrik, Minot, ND, for Superpumper, Inc.

Daniel Conrad, Washington, DC, for USA/IRS.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By the complaint filed April 20, 2000, Superpumper, Inc. ("Superpumper") seeks to setoff its debt to Debtor Nerland Oil, Inc. ("Nerland Oil") under a promissory note dated June 29, 1995, against a debt for unpaid credit card receivables that Nerland Oil owes Superpumper. As of October 31, 1996, Superpumper owed Nerland Oil $359,790.18 under the promissory note, and Nerland Oil owed Superpumper $348,856.26 for unpaid credit card receivables. This issue was at the heart of a state court arbitration decision awarding setoff of the debts described above. Superpumper has filed a motion for summary judgment asking this Court to adopt the arbitration decision in toto. The chapter 7 trustee for Nerland Oil opposes summary judgment and rejects the decision of the arbitration panel, arguing that setoff is improper because the debts at issue lack "mutuality" as that term is defined in the context of section 553(a) of the Bankruptcy Code. Also responding is the Internal Revenue Service ("IRS"), which claims an interest in the promissory note dated June 29, 1995, on the basis of several prior tax liens assessed against Nerland Oil. Although the IRS was not a party to the state court arbitration proceeding, it has filed a cross-motion for summary judgment which does not contest any of the factual determinations made by the arbitration panel. The IRS does, however, take issue with the arbitration panel's decision to award setoff, asserting that its interest in Nerland Oil's right to receive payments under the promissory note is superior to any right of setoff held by Superpumper. As it was not a party in the arbitration proceeding, the IRS argues that it is not bound by the arbitration panel's ultimate decision regarding setoff.

### 1.

### Procedural History

On January 28, 1997, Superpumper commenced a lawsuit against Nerland Oil in state court seeking, inter alia, to setoff its debt to Nerland Oil under a promissory note against Nerland Oil's alleged debt to Superpumper for unpaid credit card receivables. Central to the dispute were three contracts, two of which contained arbitration clauses. Due to the interrelationship of the subject contracts, the state court ordered that the entire dispute be submitted to arbitration.

Superpumper appealed the order mandating arbitration to the Supreme Court of North Dakota. The appeal was subsequently denied, and the dispute went to arbitration. The arbitration proceeding was conducted on June 2 and 3, 1999, before a three-member arbitration panel of respected attorneys. The panel heard two full days of testimony and received numerous exhibits. On August 18, 1999, the arbitration panel issued its memorandum opinion granting Superpumper's request

for setoff. The memorandum decision included detailed findings of fact and conclusions of law similar to what a court might have rendered. As to setoff, the arbitration decision states:

> The balance owed on the Superpumper, Inc. promissory note dated June 29, 1995, which is secured by the Dakota Fuel Stop Mortgage, is the sum of $10,933.92, plus interest accrued after October 31, 1996, at the rate of eight and one-half percent per annum. This promissory note is now due and payable in full. This amount is net of all offsets between the parties, including West Fargo Truck Stop, Inc.

Superpumper submitted a proposed judgment to the state district court and moved for confirmation of the arbitration decision. The state court issued an order confirming the arbitration decision, and this order is the subject of Nerland Oil's pending appeal to the Supreme Court of North Dakota.

Nerland Oil filed its chapter 7 bankruptcy petition on November 5, 1999. In recognition of the automatic stay, the state court denied Superpumper's request for a judgment to be entered on the arbitration award.[1] Nevertheless, Superpumper initiated the instant adversary proceeding in Nerland Oil's bankruptcy case. Superpumper and the IRS then submitted the instant motions for summary judgment. On September 19, 2000, after all the parties filed their respective summary judgment briefs, supporting affidavits, and exhibits, the Court conducted a hearing with respect to the competing summary judgment motions. At the hearing, both Superpumper and the IRS conceded that the state court arbitration proceeding had resolved all the material factual issues. The chapter 7 trustee, while disagreeing with the arbitration decision as to setoff and opposing Superpumper's motion for summary judgment, did not propose to offer any significant evidence at trial beyond what is already before the Court.[2] Specifically, in addition to the parties' respective briefs and affidavits, the following exhibits have been submitted for the Court's consideration in conjunction with the instant summary judgment motions:

1. *Superpumper Exhibit A:* the state court arbitration memorandum decision of August 18, 1999.

2. *Superpumper Exhibit B:* excerpts from a deposition of Brent Nerland, President of Nerland Oil.

3. *Superpumper Exhibit C:* the cover page and table of contents of a brief to the Supreme Court of North Dakota appealing the state court order that confirmed the arbitration decision.

4. *Superpumper Exhibit D:* the Assignment of Mortgage dated November 27, 1995, executed on behalf of Nerland Oil in favor of the IRS. This mortgage secured the Dakota Fuel Stop promissory note that Superpumper gave Nerland Oil pursuant to the Dakota Fuel Stop sale.

5. *Superpumper Exhibit E:* the October 28, 1996, letter and enclosures

---

1. Superpumper's complaint in this matter indicates that its proposed judgment was signed and "filed" by the Clerk of Court in state court. The complaint also indicates that this was a mistake that occurred by reason of clerical error.

2. The only new evidence the chapter 7 trustee proposed to present at trial was testimony from Brent Nerland to the effect that Superpumper was aware of Nerland Oil's financial difficulties with the IRS when it entered two contracts with West Fargo Truck Stop, Inc., another company operated by Brent Nerland. As will be discussed later in the opinion, such testimony is not determinative as to the outcome of this case.

Superpumper sent to Nerland Oil, which terminated Nerland Oil's "jobber" relationship with Superpumper at the Dakota Fuel Stop.

6. *Superpumper Exhibit F:* the state court Summons and Complaint filed by Superpumper on January 28, 1997, against Nerland Oil.

7. *Superpumper Exhibit G:* Notices of Federal Tax Liens that the IRS filed with the Cass County Register of Deeds on September 21 and 22, 1998.

8. *Trustee Exhibit H:* a letter dated May 19, 1995, from Jay Carlson, counsel for Nerland Oil, to Dean Rindy, counsel for Superpumper, discussing the terms of the Dakota Fuel Stop sale.

9. *Trustee Exhibit I:* a document calculating the present value of the stream of payments West Fargo Truck Stop, Inc. was to receive under the two contracts it had with Superpumper regarding the purchase and transportation of fuel products.

10. *Trustee Exhibit J:* the offer to purchase the Dakota Fuel Stop signed by Brent Nerland on May 26, 1995.

11. *Trustee Exhibit Y:* the Freight Agreement between Superpumper and West Fargo Truck Stop, Inc. dated June 29, 1995, regarding delivery of fuel products to Superpumper's Amoco station in Belfield, North Dakota, and other locations in the Red River valley.

12. *Trustee Exhibit Z:* the Exclusive Requirements, Supply and Freight Agreement between Superpumper and West Fargo Truck Stop, Inc. dated June 29, 1995, regarding the supply and delivery of fuel products to Superpumper's Dakota Fuel Stop station in Jamestown, North Dakota.

13. *IRS Exhibit No. 1:* a certified copy of Nerland Oil's Transcript of Account with the IRS regarding taxes.

14. *IRS Exhibit No. 2:* the Proof of Claim filed by the IRS on March 10, 2000.

15. *IRS Exhibit No. 3:* the June 29, 1995, promissory note executed on behalf of Superpumper in favor of Nerland Oil pursuant to the sale of the Dakota Fuel Stop.

The record before the Court, as detailed above, reveals the following material facts.

### 2.

### *Material Facts*

Brent Nerland established Nerland Oil, Inc. in the mid–1970's. In addition to marketing petroleum products on a wholesale basis, Nerland Oil was a Conoco "jobber," meaning that it had a contract with Conoco to distribute Conoco fuel products to the Conoco retail stations that it serviced. According to industry practice, Nerland Oil, in its role as jobber, also acted as the conduit through which Conoco would forward credit card receivables to retail stations after the transactions had been processed by Conoco. Over the years, Nerland Oil acquired ownership of several convenience stores. One of those stores was a Conoco retail station and convenience store known as the Dakota Fuel Stop in Jamestown, North Dakota.

In June of 1995, Superpumper, a company in the business of owning and operating convenience stores, purchased the Dakota Fuel Stop from Nerland Oil. In partial payment of the purchase price, Superpumper executed a promissory note in favor of Nerland Oil in the amount of $350,000.00 secured by a second mortgage on the Da-

kota Fuel Stop. The annual rate of interest on the note was nine percent, and beginning on September 30, 1995, Superpumper was required to make quarterly payments of $7,545.00. The balance of the note was to be paid on September 30, 2000, or at such time as Superpumper sold the Dakota Fuel Stop.

The "offer to purchase" signed by Nerland Oil and Superpumper stated that the sale would be subject to a supply and freight agreement to be executed by Superpumper in a form acceptable to Nerland Oil. Shortly after the sale, Superpumper entered two contracts related to the sale of the Dakota Fuel Stop. On the basis of these contracts, Superpumper was credited with $579,332.00 toward the purchase price of the Dakota Fuel Stop. The other party to these contracts was West Fargo Truck Stop, Inc. ("WFTS"), a company established by Brent Nerland which owns a truck stop in West Fargo and Big Jim's Café in Jamestown, North Dakota. In the first agreement, Superpumper contracted with WFTS for the purchase and delivery of 100 percent of the Dakota Fuel Stop's Conoco brand fuel requirements.[3] The second contract was merely a freight agreement. Superpumper hired WFTS to haul fuel products to its Amoco station in Belfield, North Dakota, and to other Superpumper locations in the Red River valley. Both of these contracts contained clauses requiring that disputes be submitted to binding arbitration.

Neither of the two contracts discussed above expressly established Nerland Oil as the Conoco jobber that would service the Dakota Fuel Stop. However, it is undisputed that Nerland Oil was a Conoco jobber and that Nerland Oil acted in that capacity in dealing with Superpumper and the Dakota Fuel Stop. Most significantly, Ner-

land Oil was the conduit through which Conoco forwarded to Superpumper the credit card receivables generated by the Dakota Fuel Stop. There was no express contract between Superpumper and Nerland Oil regarding the forwarding of credit card receivables because the practice is so well known in the industry that written agreements addressing the issue are rare.

By the spring of 1996, however, Nerland Oil had fallen behind on remitting the Dakota Fuel Stop credit card receivables from Conoco to Superpumper. The amount of this arrearage continued to grow over the course of the year. On October 28, 1996, Superpumper terminated its jobber relationship with Nerland Oil and demanded satisfaction of the mortgage securing the $350,000 promissory note, asserting that the outstanding balance of credit card receivables should be applied against the amount due under the promissory note and mortgage held by Nerland Oil. Nerland Oil refused Superpumper's demand to satisfy the note and mortgage. As of October 31, 1996, Nerland Oil owed Superpumper $348,856.26 in credit card receivables, and Superpumper owed Nerland Oil $359,790.18 under the promissory note and mortgage.

Meanwhile, in the early 1990's, Nerland Oil failed to pay certain federal excise and employment taxes. The United States, through the Internal Revenue Service, made assessments for unpaid taxes against Nerland Oil on the following dates: August 9, 1993; August 30, 1993; September 20, 1993; December 27, 1993; January 3, 1994; December 9, 1996; December 31, 1996; November 3, 1997; December 22, 1997; and September 20, 1999. Notice and demand for payment of the tax assessments was sent to Nerland Oil, but Ner-

---

**3.** Curiously, WFTS was not a Conoco jobber authorized to sell the Conoco fuel products that the Dakota Fuel Stop required; nor did it have any trucks that could haul fuel.

land Oil failed to pay them. The United States filed proper notice of its federal tax liens against Nerland Oil on September 21 and 22, 1998. At the time its bankruptcy petition was filed, Nerland Oil owed the IRS $1,693,979.57 on the basis of the unpaid tax assessments. Of this amount, $566,227.16 is attributable to the tax assessments from 1993 and 1994 which occurred prior to the sale of the Dakota Fuel Stop to Superpumper.

### 3.
### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. Fed. R. Bankr.P. 7056. Summary judgment is appropriate if, "assuming all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." In re Cochrane, 124 F.3d 978, 981–82 (8th Cir.1997) (citations omitted). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. Id. at 982 (citing Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405–06 (8th Cir.1990)). Only factual disputes which may affect the outcome of a suit are sufficient to preclude summary judgment. Ries v. Wintz Properties, Inc. (In re Wintz Companies), 230 B.R. 848, 858 (8th Cir. BAP 1999) (citations omitted).

In this case, the parties concede that there are no material factual issues that remain to be tried and that there is essentially no new evidence to be offered if a trial is held. Accordingly, the resolution of this case turns primarily on legal rather than factual issues, and summary judgment is appropriate based on the detailed findings of fact rendered by the arbitration panel as augmented by the exhibits submitted in conjunction with the instant motions.

### 4.
### The Impact of the Arbitration Decision

■ Superpumper asks this Court to adopt the August 18, 1999, arbitration decision in toto. An arbitration decision may be admitted into evidence and accorded such weight as the court deems appropriate. Alexander v. Gardner–Denver Co., 415 U.S. 36, 60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974); In re Litwok, 246 B.R. 1, 8 (E.D.N.Y.2000). The question of how much weight to give an arbitration decision lies within the court's discretion upon consideration of the facts and circumstances of the case. Alexander, 415 U.S. at 60, n. 21, 94 S.Ct. at 1025, n. 21. Great weight may be accorded an arbitration decision where "the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record." Id.

■ In this case, the arbitration panel made factual findings detailing the business dealings between Superpumper and Nerland Oil. These factual issues were specifically addressed by the parties at the arbitration proceeding and were decided by the arbitration panel on the basis of an adequate record. Thus, the Court is inclined to give the arbitration decision great weight insofar as it determined what occurred between Superpumper and Nerland Oil during the period relevant to this dispute. However, the IRS was not a party to the arbitration proceeding. Furthermore, it is apparent from the arbitration panel's memorandum decision that the panel failed to adjudicate, consider, or determine the impact of the IRS tax liens on Superpumper's right of setoff. This issue was not addressed by the parties during the arbitration proceeding and was not decided by the arbitration panel. Therefore, the arbitration panel's memorandum

decision can be accorded no weight on the issue.

5.

*Setoff Under 11 U.S.C. § 553*

■ Superpumper asserts a right of setoff under section 553 of the Bankruptcy Code, which provides:

[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a). Accordingly, the following three elements must be established in order to effect a setoff in the context of bankruptcy:

1. The creditor is liable to the debtor on a prepetition debt;

2. The creditor has a claim against the debtor that arose prepetition; and

3. The debt and the claim are mutual obligations.

*See In re Sauer*, 223 B.R. 715, 724 (Bankr. D.N.D.1998) (quoting *United States v. Gerth*, 991 F.2d 1428, 1431 (8th Cir.1993)). However, the Bankruptcy Code does not create a federal right of setoff. *Sauer*, 223 B.R. at 724 (citing *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995)). Rather, section 553(a) merely preserves a right of setoff that otherwise exists under applicable nonbankruptcy law. *Id.* Thus, whether a creditor has an existing right of setoff under applicable nonbankruptcy law is a threshold issue that must be satisfied in order to invoke section 553(a). In this case, any right of setoff Superpumper may assert against the Dakota Fuel Stop promissory note is inferior to the United States' tax liens against that promissory note.

■ A federal tax lien arises on the date it is assessed and continues until the assessed tax liability is paid or unenforceable due to lapse of time. 26 U.S.C. § 6322; *State of Minnesota, Department of Revenue v. United States*, 184 F.3d 725, 728 (8th Cir.1999). The tax lien extends to all of the delinquent taxpayer's property interests and attaches to interests that are acquired while the lien is in force. 26 U.S.C. §§ 6321, 6322; *Glass City Bank of Jeanette, Pa. v. United States*, 326 U.S. 265, 267–69, 66 S.Ct. 108, 90 L.Ed. 56 (1945). Federal law governs the priority accorded to liens competing with federal tax liens. *State of Minnesota, Department of Revenue v. United States*, 184 F.3d 725, 728 (8th Cir.1999) (citing *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960)). " 'Under federal law, the priority of a lien depends on the time the lien attached to the property in question and became choate.' " *Id.* (quoting *Cannon Valley Woodwork, Inc. v. Malton Construction Co.*, 866 F.Supp. 1248, 1250 (D.Minn.1994)). "Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.' " *Id.* (quoting *United States v. McDermott*, 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993)).

■ Although it is not a lien, a state-created right of setoff is subject to the federal choateness requirement. *See Horton Dairy, Inc. v. United States*, 986 F.2d 286, 291 (8th Cir.1993); *United States v. Central Bank of Denver*, 843 F.2d 1300, 1310 (10th Cir.1988). A right of setoff becomes choate when it is exercised. *Horton Dairy, Inc.*, 986 F.2d at 291 (citing *Central Bank of Denver*, 843 F.2d at 1310). A federal tax lien arises and is choate when unpaid taxes are assessed against the delinquent taxpayer. *United States v. Leventhal*, 316 F.2d 341, 343 (D.C.Cir. 1963); *Eskanos v. Alpha 76, Inc.*, 712

F.Supp. 819, 821 (D.Colo.1989); *In re May Reporting Services, Inc.*, 115 B.R. 652, 656 (Bankr.D.S.D.1990). Thus, in order to prime a federal tax lien, a setoff must be exercised prior to the date the federal tax lien was assessed.

In this case, several tax liens were assessed against Nerland Oil in 1993 and 1994. Thus, several tax liens had become choate well before Superpumper bought the Dakota Fuel Stop from Nerland Oil in June 1995. Any right of setoff held by Superpumper cannot logically predate the June 1995 sale. Thus, Superpumper's right of setoff cannot prime the federal tax liens that were assessed in 1993 and 1994 which, as of the petition date in this case, amounted to $566,227.16–well in excess of the amount remaining due under the $350,000 promissory note that Superpumper gave Nerland Oil pursuant to the Dakota Fuel Stop sale. Since the federal tax liens from 1993 and 1994 totaling $566,227.16 are superior to any right of setoff that Superpumper may assert, setoff is inappropriate. *See Horton Dairy, Inc.*, 986 F.2d at 291 (setoff is improper where IRS tax lien granted the United States an interest in the delinquent taxpayer's bank account that was superior to the bank's inchoate right of setoff); *see also Clark v. Sullivan*, 3 N.D. 280, 55 N.W. 733, 736 (1893) ("To the extent that the setting off of one judgment against another would affect the rights of third persons-rights which have equitable claim to superiority-the court will refuse to compel the payment of one of these judgments with the other."). In short, Superpumper has no enforceable right of setoff under applicable nonbankruptcy law and, therefore, cannot invoke section 553(a) of the Bankruptcy Code.

### 6.

### *Inapplicability of 26 U.S.C. § 6323*

██ Nevertheless, Superpumper asserts that its claimed right of setoff is similar to a security interest. According to section 6323(a) of the Internal Revenue Code, "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, *holder of a security interest,* mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a) (emphasis added). Within the context of section 6323, however, "security interest" is defined as follows:

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time
>
> (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and
>
> (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1). Thus, Superpumper's claimed right of setoff must qualify as a security interest under the above definition before Superpumper may invoke 26 U.S.C. § 6323(a).

In this case, Superpumper argues that it has a security interest in the credit card receivables that Nerland Oil unlawfully retained. Superpumper concedes that its security agreement does not arise from an express contract. Instead, Superpumper claims that its security agreement arises from an implied contract based on industry custom and practice where the "jobber" is responsible for remitting credit card receivables to the retailer after they have been processed by Conoco. Superpumper

claims an implied security interest in the subject credit card receivables for the purpose of securing performance of Nerland Oil's obligation to remit those receivables to Superpumper. Superpumper asserts that it exercised its right of setoff by means of the October 28, 1996, letter it sent to Nerland Oil, which predates the notice of federal tax liens filed by the United States on September 21, 1998. In this manner, Superpumper argues that its alleged security interest has priority over the United States' tax liens.

However, Superpumper's argument is fatally flawed. First, Superpumper claims a security interest in the wrong asset. Superpumper alleges a security interest in credit card receivables wrongfully retained by Nerland Oil. However, the property in contention is the right to receive payments under the Dakota Fuel Stop promissory note. Superpumper does not contend that its alleged security interest extends to the promissory note. Thus, by virtue of its failure to claim an interest in the Dakota Fuel Stop promissory note payments at issue, Superpumper cannot qualify as the holder of a security interest in those payments.

Second, Superpumper's alleged implied contract with Nerland Oil regarding credit card receivables cannot be characterized as a security agreement. At best, all that can be implied from industry custom and practice in this case is an obligation on the part of Nerland Oil to remit credit card receivables to Superpumper after they have been processed by Conoco. That Nerland Oil failed to remit these receivables and therefore owed Superpumper $348,856.26 as of October 31, 1996, is undisputed. That Superpumper owed Nerland Oil $359,790.18 under the Dakota Fuel Stop promissory note as of October 31, 1996, is likewise undisputed. However, there is no basis upon which to conclude that the existence of these debts "reflected a desire by the parties to secure each other's obligations." *In the Matter of Elcona Homes Corp.*, 863 F.2d 483, 486 (7th Cir.1988). Superpumper simply has no security agreement covering the right to receive payment under the promissory note. Accordingly, Superpumper does not qualify as the "holder of a security interest" in the promissory note payments, and its argument under 26 U.S.C. § 6323(a) must fail.

7.

*Conclusion*

The state court arbitration decision can be accorded no weight as to the rights of the IRS pursuant to its federal tax liens. Moreover, the IRS holds at least $566,227.16 in federal tax liens against Nerland Oil that (1) attached to the Dakota Fuel Stop promissory note at the time it was made, (2) are superior to any right of setoff that subsequently arose in favor of Superpumper with respect to the note, and (3) exceed the amount remaining due under the note. Under these circumstances, the right of setoff claimed by Superpumper is not enforceable under applicable nonbankruptcy law, and therefore, Superpumper may not invoke section 553(a) of the Bankruptcy Code. Accordingly, the Court need not address the chapter 7 trustee's contention that the debts at issue between Superpumper and Nerland Oil lack mutuality within the meaning of 11 U.S.C. § 553(a). Based on the foregoing, the motion for summary judgment filed by Superpumper on June 30, 2000, is hereby DENIED, and the cross-motion for summary judgment filed by the IRS on August 1, 2000, is hereby GRANTED. Judgment shall be entered in favor of defendant IRS dismissing the complaint in this adversary proceeding with prejudice.

JUDGMENT MAY BE ENTERED ACCORDINGLY.

SO ORDERED.

*ORDER UNDER F.R. CIV. P. RULE 54(b) CERTIFYING THE OCTOBER 20, 2000 JUDGMENT HEREIN TO BE FINAL*

The Honorable William A. Hill, United States Bankruptcy Judge, having duly considered Plaintiff Superpumper, Inc.'s Motion to Certify Entry of Final Judgment,

The Court expressly determines that there is no just reason for delay in making the October 20, 2000, Judgment herein final.

**IT IS EXPRESSLY ORDERED that the Judgment dated and entered herein on October 20, 2000, be certified as a final judgment.**